[Civ. No. 6408.   Third Appellate District.—March 10, 1941.]

EDWIN D. EMERY, Respondent, v. THE PACIFIC TELE-
PHONE AND TELEGRAPH COMPANY (a Corpora-
tion), Appellant.

Neumiller & Ditz, Pillsbury, Madison & Sutro, Alfred Sutro, Samuel L. Wright, Irving L. Neumiller and R. L. Beardslee for Appellant.

404

Gumpert & Mazzera, C. H. Hogan and Charles A. Zeller for Respondent.

THE COURT.—This is an appeal by defendant Pacific Telephone and Telegraph Company from a judgment in a personal injury action in favor of plaintiff.

On the day of the injury, October 29, 1937, appellant, for the purpose of carrying on its business, maintained cables, wires and poles in the city of Lodi. The city of Lodi, a municipal corporation, was then engaged in the business of distributing electric power to consumers in its limits, and for that purpose owned, used and maintained power lines, poles and electrical equipment.

For the joint ownership of certain poles in the city of Lodi, appellant and the city had, in 1919, entered into a written agreement. In 1923 appellant, by purchase, became the owner of a one-half interest in certain poles in the city of Lodi, including the pole here in question. This pole was one of a string of several such poles and supported the electric power lines of the city and the communication lines of appellant.

The power line of the city on this string consisted of four copper wires, three of which were charged with 2300 volts, the fourth being a ground wire carrying no electric current. These lines were carried on wooden cross arms near the top of the poles, while appellant's wires were attached to cross arms a few feet above the middle of the pole and about 20 feet from the ground.

On the day preceding this accident the city, in order to install a new ground wire and to take up the sag in the power wires, had untied its wires and left the wires lying on the top of the cross arms.

On the day in question employees of the city electrical department, including plaintiff, were sent to complete this work and to "tie in" or secure these wires to the insulators. In the regular progress of this work plaintiff reached the pole in question. This pole was a 40 foot Western Cedar 34 feet above the surface of the ground and 6 feet below the ground imbedded in concrete. The cross arm supporting the power wires was within 6 inches of the top. A few feet below this cross arm was a street light, supported by an iron bracket, and a third arm, known as a buck arm. Below these

attachments was the cross arm carrying the lines of appellant.

Plaintiff was equipped with spurs or hooks fastened to each foot to assist in climbing the poles. He also had about his waist a leather safety belt, leather and rubber gloves, and tools and parts necessary in his work. When he reached the top of the pole he adjusted his safety belt, donned his rubber gloves and proceeded to tie in the most northerly wire by reaching over the nearer wire. This is known to linemen as "working from above" to distinguish that method from one where the lineman reaches above and places and attaches the wire.

Plaintiff testified that in shifting his weight in order to reach or lift the wire, the pole began to sway, causing his weight to shift, bringing an additional weight onto his hooks, which gave way. As he started to slip he attempted to strike his hooks into the pole, get back into a vertical position and to throw his arms above his head in an effort to miss the wires if he should fall. That is all he remembers, but apparently he came in contact with one of the power wires, causing him to lose consciousness and inflicting the injuries here complained of.

▆ Appellant urges upon this appeal the court erred in admitting in evidence the contract between the city and appellant, and particularly Paragraph D of Article Third in that the definition of defective poles therein did not establish a standard for maintenance or replacement, but was applicable only to poles in which one of the contracting parties might desire to acquire a part interest.

It is also contended plaintiff was guilty of contributory negligence, that the court erred in its instructions to the jury, and that the jury were guilty of prejudicial misconduct.

It must be conceded that the agreement was not attempting to fix a standard of safety—the purpose was to fix a basis for the acceptance or replacement of poles in place at the time the joint ownership agreement went into effect.

Article First of the agreement applies to the joint maintenance of the poles. It provides that the poles shall be constructed, erected and maintained in accordance with "specifications for joint use of poles by Telephone, Electric Light and Power Companies" a copy of which is incorporated in the

contract as an exhibit. Paragraph B of Article First provides that if at any time repairs, reconstructions, renewals or removal of any pole or poles owned jointly by the parties shall be deemed necessary, the expense of such repairs or removal shall be jointly borne, and if the parties cannot agree as to the necessity for such repairs, etc., a provision is made for arbitration.

Article Third is in part as follows:

"The purchase or exchange of joint ownership in existing poles or pole lines, which may be agreed upon between the parties hereto, shall be arranged on the following basis: . . ."

Paragraph D defines defective poles and provides they shall be replaced at joint expense. Defective poles are defined as follows:

"One. Less than the requisite circumference of sound wood at the ground line.

Two. More than the allowable size of hollow heart.

Three. Badly rotted poles above ground, woodpecker holes, cracks or other defects."

This paragraph also contains a schedule for minimum circumference of sound wood, which specifies for a 40 foot pole, 44 inches at the ground, and for a 40 foot pole a shell of sound wood of at least 3 inches thick.

This contract was offered in evidence and read in full to the jury by respondent. An objection was made first as to authority of the officials of the city to bind the municipality. That objection was overruled and no point is made of that ruling. An objection to its admissibility was then urged that it was irrelevant to any issue in the case. That objection was overruled and that ruling is now under attack. It was proper evidence for certain purposes at least.

Appellant in its answer denied that it jointly, with the city of Lodi, owned and maintained the pole in question. The agreement was properly admitted to answer that denial. And not only was the contract admissible to prove joint ownership but it was also competent to establish the relationship between plaintiff and defendant at the time of the accident. Under its terms each of the contracting parties was bound to exercise due care for the safety and protection of the employees of the other, and at the time of the accident the relation of invitor and invitee existed between plain-

tiff and defendant, and therefore defendant was legally bound to exercise ordinary and reasonable care for the safety of plaintiff as its invitee while working upon the pole jointly owned by it and the city of Lodi. (*Hanna* v. *Central States Electric Co. et al.,* 210 Iowa 864 [232 N. W. 421].)

█ Also, inasmuch as certain officials and employees of the city of Lodi were called as witnesses on behalf of defendant, the contract was properly admitted to prove bias or prejudice, for it appeared from the contract that the city might be obligated to pay one-half of any judgment obtained by plaintiff. The only way this bias could be shown was by the agreement itself.

As often said, if evidence is admissible for any purpose it must be received, even though it may be improper for another purpose. (*Inyo Chemical Co.* v. *City of Los Angeles,* 5 Cal. (2d) 525 [55 Pac. (2d) 850]; *Smith* v. *Dean,* 25 Cal. App. (2d) 671 [78 Pac. (2d) 448].)

█ No specific objection to the introduction of this contract was made nor a request to the court to limit it as evidence for a particular purpose only, and failure to so request the court to limit its effect must be deemed a waiver of the objection, and complaint cannot be made for the first time on appeal. (*Barsha* v. *Metro-Goldwyn-Mayer,* 32 Cal. App. (2d) 556 [90 Pac. (2d) 371].)

The evidence discloses that plaintiff was an employee of the city of Lodi, and assigned as a lineman in its electrical maintenance department, and that he was engaged in his employment when he climbed the pole in question. The testimony is uncontradicted that while engaged in tying a wire the pole abnormally swayed, throwing him off balance, causing his climbing hook to slip, whereby he fell, and came in contact with a high voltage wire. It is also in evidence the pole was rotted at the base and lacked sufficient sound wood to support it. The conclusion of the jury was that if defendant and the city of Lodi had exercised ordinary care and supervision to maintain this pole in a safe condition the accident would not have happened.

Whether or not the provisions in the contract were intended as a standard of soundness as to the poles in regard to their purchase only or whether the two contracting parties had in mind the safety of their employees is not of initial importance here. We have been cited to no statement of coun-

sel for plaintiff wherein he argued that a violation of the standards set forth in the agreement constituted negligence as to plaintiff. It is not claimed that the agreement was admissible to show a violation of a duty to plaintiff and thereby to establish negligence on the part of defendant. At most it showed a standard of defectiveness when it came to acquiring title in the poles. The jury could, and as far as the record discloses did, come to their conclusions upon other and sufficient evidence that the pole was not reasonably safe for the purpose it was intended for.

■ It is also urged that plaintiff was guilty of contributory negligence in that he selected a dangerous and hazardous method to do his work. It must be conceded that there was no safe way to do this hazardous work, surrounded by high voltage wires on a wet and foggy day 30 feet above the street. He was a lineman of at least one year's experience and it devolved upon him to choose the safest and most efficient method to accomplish his task. The evidence is not that he came in contact with a charged wire by reason of his work or because of thoughtlessness. It does not appear that a rubber "snake", a heavy rubber tube which could be placed over hot wires with which he might come in contact, would have saved him. His injury was caused by his spur or hook slipping because of the swaying pole, and no criticism is made of his use or adjustment of his hooks. The jury and the trial court heard all the witnesses who told how the work should or should not have been done, and the jury found the plaintiff was not guilty of contributory negligence, which finding was accepted as true by the court upon the motion for a new trial.

" . . . That the existence or absence of contributory negligence is in general a matter primarily for the jury there can be no doubt. . . . If but one conclusion can reasonably be reached from the evidence it is a question of law for the court, but if one sensible and impartial man might decide that the plaintiff had exercised ordinary care, and another equally sensible and impartial man that he had not exercised such care, it might be left to the jury."

That statement is from the opinion of the Supreme Court in the case of *Jacobson* v. *Oakland Meat & Packing Co.*, 161 Cal. 425 [119 Pac. 653, Ann. Cas. 1913B, 1194].

█ Appellant complains of two instructions. The court gave the following:

"If you believe that plaintiff Emery's injuries, if any, were solely and proximately caused by any latent defects in an unsound and defective pole, if it was such a pole, and if it was jointly owned, used and maintained by the City of Lodi, and the Pacific Telephone and Telegraph Company, in the absence of any knowledge on the part of Emery as to such latent defect, if any, or of any facts which would in the exercise of ordinary care put him upon inquiry, then I instruct you that the law did not require Emery to conduct an investigation on his own account as to the existence of latent defects, if any, in the pole which was provided for the doing of his assigned work."

Appellant claims that under this instruction the jury were prohibited from finding respondent contributorily negligent even though they believed from the evidence that an ordinarily prudent person under the same circumstances would have inspected and tested the pole before climbing it.

The court was here discussing latent defects, of which plaintiff had no knowledge or knew of no fact that would put him upon inquiry. Plaintiff, as an employee of the city of Lodi had a right to assume his employer had provided him a reasonably safe place to work. He also knew the city maintained an inspection department and made regular inspections of its poles and equipment.

In *Price* v. *Northern Electric Ry. Co.*, 168 Cal. 173 [142 Pac. 91], it is said:

"In the absence of actual knowledge to the contrary, or circumstances under which he would be held to be required to have such knowledge, he had the right to assume, when directed to assist in removing the scaffolding, that the bent had been so braced that it would not fall when the scaffolding was removed."

In *Starr* v. *Kreuzberger*, 129 Cal. 123 [61 Pac. 787, 79 Am. St. Rep. 92], this rule of law is stated:

"The servant has a right to rely upon the master's inquiry, because it is the master's duty so to inquire, and the servant may justly assume that all these things are fit and suitable for the use which he is directed to make of them. Mr. Justice Temple in the Silveira case said: 'The employee is not required to use any degree of care or diligence to dis-

cover defects. He will be held to have assumed the risk only when he knew, and will be held to have known when the defect was so obvious that he must have known or simply refused to open his eyes and see, or when he was put upon inquiry by some discovery or suggestion of danger which it was gross carelessness for him to neglect.' ''

■ This principle is as applicable to an invitee, as was plaintiff, as to that of an employee.

■ Another instruction is urged by appellant as erroneous. It was dealing with the degree of care required of respondent as affecting the allegation of contributory negligence. The court instructed the jury that the law required of plaintiff that he exercise for his own safety that degree of care which an ordinarily prudent person, with his knowledge and experience would have exercised under similar circumstances.

In *Giraudi* v. *Electric Improvement Co.*, 107 Cal. 120 [40 Pac. 108, 48 Am. St. Rep. 114, 28 L. R. A. 596], the court, in considering the refusal to give an instruction with reference to contributory negligence, said:

''The instruction asked had reference only to the alleged contributory negligence of plaintiff. As to that it has been said: 'As there are different classes in society, with widely different degrees of intelligence, the plaintiff was not required to exercise more care than is usual under similar circumstances among careful and prudent persons of the class to which he belongs.' '' (Shearman and Redfield on Negligence, sec. 87.)

Plaintiff testified he had experience in handling high voltage wires and fully appreciated their dangerous qualities, and that he should take every precaution to protect himself. Even if it might be argued that in some instances the instruction would sanction a lower standard of care by one than by another with more knowledge and experience, in the instant case that condition from the evidence did not exist and appellant could not have been prejudiced by the instruction even if subject to criticism.

■ Finally it is claimed certain of the jury were guilty of prejudicial misconduct. On next to the last day of the trial the jury were taken to view the scene of the accident and the pole. They were accompanied by the judge and respective counsel. While at the scene, one of the jurors,

in the presence of counsel, made certain measurements of the pole by means of a small caliper. Another juror inserted his hand in a cavity in the side of the pole.

Counsel for appellant, who assert they saw these acts by the particular jurors, made no objection, did not call the matter to the attention of the court, nor ask any instruction to the jury to disregard such information so obtained. By their failure to act they have waived any objection they might have. (*Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237 [116 Pac. 513]; *Kershaw* v. *Tilbury*, 214 Cal. 679 [8 Pac. (2d) 109].)

After carefully reading the rather lengthy record and studying the authorities by respective counsel we can find no errors of sufficient seriousness to justify a reversal. The judgment is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied May 8, 1941.