[Civ. No. 15317.   First Dist., Div. One.   Dec. 12, 1952.]

GUS MARIOTTI, Respondent, v. HERMAN BERNS, Appellant.

Bronson, Bronson & McKinnon for Appellant.

James F. Boccardo and Edward J. Niland for Respondent.

WOOD (Fred B.), J.—Defendant Herman Berns owned an office building and adjacent parking area in San Jose which was leased to the State Department of Motor Vehicles. The department had sublet a portion of the building to the California Highway Patrol.

The lease provided that ''The lessor shall . . . maintain the demised premises in good repair and tenantable condition during the continuance of this lease.''

The parking area was not in repair at the time of plaintiff's accident. It was full of ruts and holes, a condition of which defendant was aware. Plaintiff, a member of the highway patrol, also knew it was full of holes.

Plaintiff, under orders from his employer to attend a meeting at this place on May 20, 1949, at 7:30 p. m., drove his car to the meeting and parked it at the edge of the parking area, arriving at dusk, about 7:25 p. m. Two cars were already parked there. He got out of his car and started to walk across the parking area toward the building, a distance of about 20 feet. His left foot slipped and he fell into a chuckhole. He knew the holes were there, saw them along the driveway and avoided the ones he saw. He said he was going very carefully. As he walked along he could see other chuckholes there. He said he did not trip on some part of the chuckhole but that his foot slipped right by the chuckhole and he went down. His foot probably slipped right on the edge of the chuckhole. He was not hurrying.

Plaintiff's back and his left knee were affected by the fall. He brought this action to recover damages for the injuries sustained. The jury gave him a verdict for $12,000. Defendant Berns has appealed from the judgment entered upon that verdict.

The sole error assigned by the defendant is the rejection by the trial court of two instructions requested by the defendant, defining the duties of the defendant toward the plaintiff under the circumstances narrated. The rejected instructions read as follows: ''While as I have told you, it is the duty of the owner of real property to exercise ordinary care to maintain the premises in a reasonably safe condition, this does not mean that his duty is to keep the premises absolutely safe. The real ground of liability, if any there is, is the owner's superior knowledge of an unsafe condition on the premises and the danger, if any therefrom, to persons entering said premises. It is only when a voidable, dan-

gerous condition exists and is known to the owner, or should, in the exercise of ordinary care, be known to him, and not to the person injured, that a recovery is permitted.'' (Defendant's proposed instruction No. 11.) ''Should you find from a preponderance of the evidence that a dangerous condition existed in the parking area in question at the time of the accident, but if you should also find from the evidence that such condition, if any, was an obvious one; that is, a condition that was as apparent to plaintiff Gus Mariotti as it was to defendant, then I instruct you that plaintiff is not entitled to recover against the defendant, but your verdict must be against the plaintiff and in favor of the defendant, providing, of course, that you find plaintiff's failure to observe said condition contributed directly and proximately to the injuries sustained.'' (Defendant's proposed instruction No. 13.)

The first sentence of instruction No. 11 is accurate as far as it goes, but was adequately covered by an instruction given. The remainder of Nos. 11 and 13 was based upon descriptions of the obligation which the law imposes upon the owner of property toward his own invitees in the absence of a contract by the owner to make repairs. (See *Shanley* v. *American Olive Co.*, 185 Cal. 552, 555 [197 P. 793]; *Blodgett* v. *B. H. Dyas Co.*, 4 Cal.2d 511, 512 [50 P.2d 801]; *Dingman* v. *A. F. Mattock Co.*, 15 Cal.2d 622, 624 [104 P.2d 26]; *Blumberg* v. *M. & T. Inc.*, 34 Cal.2d 226, 229 [209 P.2d 1]; Restatement of the Law of Torts, §§ 340 and 343.) In such a case, it is said, the duty of the property owner is reduced to the extent that the duty of self-protection rests upon the invitee; e.g., if the dangerous condition is known to the invitee and he realizes the risk, the owner is absolved from responsibility. That obligation, says the defendant, passes to the tenant when the owner leases the property unless the owner covenants to keep the premises in good repair, in which case he simply retains that obligation unchanged in character and scope. That may be the law in some jurisdictions, but not in California.

In this state, when an owner leases real property and in the lease obligates himself to keep the property in good repair, his obligation toward the lessee and invitees of the lessee is as expressed in section 357 of the Restatement of the Law of Torts: ''A lessor of land is subject to liability for bodily harm caused to his lessee and others upon

the land with the consent of the lessee or his sub-lessee by a condition of disrepair existing before or arising after the lessee has taken possession, if (a) the lessor, as such, has agreed by a covenant in the lease or otherwise, to keep the land in repair, and (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented." That was the holding in *Scholey v. Steele* (1943), 59 Cal.App.2d 402 [138 P.2d 733], limited "to the case of an express covenant to make the repairs included in the terms of the lease or otherwise supported by consideration." (P. 405.) In overruling a contention that the lessee's knowledge of the dangerous condition (defective steps and railing) should be imputed to the invitee, the court made this additional comment: "even if the doctrine of imputed negligence is applicable, it would still present a question of fact for the trial court as to whether a person of ordinary prudence with the tenant's knowledge would continue to use the steps." (P. 406.)

The Scholey ruling was followed in *Singer v. Eastern Columbia, Inc.* (1945), 72 Cal.App.2d 402 [164 P.2d 531], in which it appeared that the lessee may have known of the dangerous condition (insecurely fastened windowpanes) but the injured invitee did not. "The rule, insofar as liability to an invitee is concerned, is not predicated upon the tenant's lack of knowledge of the defective condition, and this the court in the Scholey case no doubt had in mind when following the rule, since the tenant in that case had full knowledge of the condition. The fact that the tenant has knowledge of a defective condition, although it relieves the landlord of liability where there is no agreement upon his part to repair, does not relieve him where there is such an agreement. This is entirely reasonable, for when the duty rests upon the landlord the tenant will naturally depend upon him to make the repairs and allow conditions to exist which he would otherwise cause to be corrected. Under defendant's theory a landlord having contracted to keep premises in repair would be under no greater liability for injuries to his tenant, or the latter's invitees, than if there had been no such covenant. But the agreement of the landlord to correct a condition which is dangerous places him under a duty which would not exist otherwise, and in order to relieve himself of responsibility he must correct the condition as agreed, and not merely notify the tenant that it exists."

(Pp. 411-412.) In the Singer case, as in the Scholey case, a petition for a hearing by the Supreme Court was denied.

The Scholey and Singer decisions are in line with the trend of decision elsewhere. Prosser, writing in 1941, observed that an increasing minority of the courts had worked out a liability in tort and that the "minority view has been slowly gaining ground, and has received the approval of the Restatement of Torts," citing sections 357 and 378 of the Restatement. (Prosser on Torts, p. 661.) The author of the note in 163 American Law Reports 300, writing in 1946, observed that at the time of certain earlier annotations (1920 and 1930) there was clearly a majority and a minority view as to liability of the landlord for personal injuries in case of his total failure to perform his agreement to repair. "The majority rule was that the landlord with not liable. However, there is now a pronounced trend toward the view that the landlord is liable for personal injuries under such circumstances, and the American Law Institute's Restatement of the Law of Torts accepts this view. (See § 357.)" (P. 300 of 163 A.L.R.)

▉▉ The facts in our case are similar in many respects to those which obtained in *Foster* v. *A. P. Jacobs & Associates,* 85 Cal.App.2d 746 [193 P.2d 971]. There the plaintiff was an employee of the tenant of a portion of an office building. She fell and injured herself on the newly waxed floor of a hallway. The floor had been waxed by a person employed by the landlord as janitor and maintenance man for the building. The plaintiff noticed that the floor had been waxed and that it was "very slippery and glaring." She had occasion to go into the hallway during the course of her work and on the way to and from lunch. It was not until the latter part of the afternoon that she slipped and fell. Her knowledge of the dangerous condition did not absolve the lessor as a matter of law. The court distinguished *Mautino* v. *Sutter Hospital Assn.,* 211 Cal. 556 [296 P. 76], upon the ground that in the Mautino case plaintiff, employed by a patient in defendant's hospital, discovered the dangerous condition at the inception of her employment, whereas in the Foster case the plaintiff had been upon the premises as an invitee for several years before the dangerous condition developed. Accordingly, in the Foster case it was the "duty of the owner not only to maintain the premises in a reasonably safe condition but to refrain from creating

an unsafe condition by active negligence. Plaintiff had every right to continue on with her work even though she observed a change in the condition and realized that it involved *some* additional risk if as a reasonable person she concluded that this could be done through the exercise of additional precautions. She could not in reason be expected to either quit her job or waive all recourse for using a floor that her duties of long standing required her to use just because her employer's landlord chose, in the course of such maintenance, to apply wax in such manner as to make the floor slippery and dangerous. . . ." (Pp. 753-754.) That reasoning applies to our case. Plaintiff had been in the employ of the highway patrol for 27 years. The patrol had been using this particular building and parking area for six or seven years. The holes in the pavement did not begin to develop until the last two years.

However, the length of the invitee's previous employment would not seem to be the crucially determinative factor in ascertaining the lessor's liability. The Mautino case readily may be distinguished upon the ground that the plaintiff Mautino was treated as the invitee of the owner of the building (at Mautino's own request the trial court so instructed the jury) and the judgment in Mautino's favor had to be reversed because three of the instructions given were erroneous under any theory. In contrast, the plaintiff in the Foster case was an invitee of a tenant of the owner of the building and was injured as the result of a dangerous condition in a hallway which the lessor kept under his own control to the extent at least of furnishing janitorial service.

■ There is a marked resemblance between the Foster case and *Johnston* v. *De La Guerra Properties, Inc.*, 28 Cal. 2d 394 [170 P.2d 5], in which the court enunciated the principle that "One who leases a part of the premises, retaining control of other portions such as common walks or passages which the tenant is entitled to use, is subject to liability to persons lawfully on the land with the consent of the tenant for damages caused by a dangerous condition existing on the part under the owner's control, if by reasonable care he could have discovered the condition and made it safe. *Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal.2d 1, 14 [47 P.2d 462]; *Spore* v. *Washington*, 96 Cal.App. 345 [274 P. 407]; see *Brown* v. *Pepperdine*, 53 Cal.App. 334, 336 [200 P. 36]; Rest., Torts, § 360; Prosser on Torts [1941], pp. 656-657; 32 Am.Jur., 561; 15 Cal.Jur 741.)" (P. 399.) This is the

very principle which is expressed in somewhat different words in section 360 of the Restatement of the Law of Torts and leaves no room for the concept that in such a case the landlord would be under no obligation toward the invitee if the latter knew of the dangerous condition.

█ The same principle was expressed in *Harris* v. *Joffe,* 28 Cal.2d 418, 423 [170 P.2d 454], in these words: "When a portion of the premises is reserved by the landlord for use in common by himself and his tenants, or by different tenants, a duty is imposed upon the property owner to use ordinary care to keep that particular portion of the premises in a safe condition." The plaintiff, lessee of an apartment, slipped and fell while walking through the entranceway to the building. There was evidence that plaintiff had previous knowledge of the dangerous condition there. That knowledge did not of itself, as a matter of law, reduce or satisfy the lessor's obligation toward her. It was evidence, but not conclusive evidence, on the issue of contributory negligence. Said the court: "Turning to the question of contributory negligence, the finding of the trial court on this issue is also fully justified by the evidence. Previous knowledge of the defective condition is not, of itself, conclusive evidence that a plaintiff failed to exercise due care." (P. 425 of 28 Cal.2d.) █ That reasoning is equally pertinent and persuasive when applying the principle expressed in section 357 of the Restatement and convinces us that in our case the trial court's rejection of defendant's instructions 11 and 13 was without error.

The judicial authorities upon which defendant relies are not helpful. None of them involved a breach of a lessor's agreement to repair, as a ground of liability for personal injury to a tenant or the invitee of a tenant. Nearly every one, illustrated by *Blodgett* v. *B. H. Dyas Co., supra,* 4 Cal. 2d 511, was the case of an action brought against an owner or occupant of real property by one of his own invitees.

Plaintiff claims that defendants' proffered instructions were erroneous under any theory. That is a question we do not undertake to decide. The decision which we have indicated determines the sole issue upon this appeal.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1953.