[Civ. No. 16040. First Dist., Div. Two. Feb. 7, 1955.]

KENNETH DOUGLASS, Respondent, v. ANSEL R. DOUGLASS, Appellant.

Partridge, O'Connell & Whitney and Wallace O'Connell for Appellant.

Arthur T. Bridgett and Bridgett & Marcus for Respondent.

DOOLING, J.—Defendant appeals from a judgment entered on a jury verdict awarding plaintiff $5,000 for personal injuries. Respondent was an electrician by occupation and

in his spare time he had been gratuitously installing the electrical wiring in a home workshop which was being constructed by his uncle, the appellant.

On Sunday, January 13, 1952, respondent worked with appellant and installed conduits for the wiring. At the conclusion of that day there remained some little electrical work to be done, including the installation of electrical outlet boxes in the walls of the workshop. It was necessary to mount these outlet boxes on strips of wood and these wooden strips must be thin enough so that the outlet boxes would fit between the outer wall and the inner wall yet to be installed. Respondent told appellant that he would return on Tuesday to finish the electrical work and appellant promised respondent that he would cut the wooden strips for the outlet boxes, "he said he would cut them and have them ready for me to put in." Appellant told respondent that he had arranged for the electrical inspector to come on Wednesday and the electrical work should be finished by that time.

On Tuesday afternoon it was raining and the respondent, who was doing outside work in his regular employment, took the afternoon off to finish the electrical installation for his uncle. He arrived about 2 p. m. and let himself into the workshop with a key which his uncle had given him. The latter had not cut the wooden strips for mounting the outlet boxes, and after respondent had done some other work he looked for some wood suitable for the purpose. He found some pieces of redwood which being soft he thought could be easily cut. These were 30 inches long, 4 inches wide and ¾ inch thick. They were a fraction of an inch too thick for the desired purpose so respondent looked about for a tool to cut them down.

About in the center of the workshop there was an electrically operated jointer. The jointer was resting on a frame and was approximately 2½ feet high. Basically the jointer consists of two platforms or tables, with blades rotating on a cylinder between the two platforms. One platform is stationary and the other may be raised or lowered. The board to be planed is set on the adjustable table and its end forced against the rotating blades. By lowering this table, more of the board to be planed is brought in contact with the rotating blades and hence more of the wood is removed from its lower surface.

Respondent's only experience with the use of this jointer was that about a year before he had used it on one occasion.

At that time it was set for a very shallow cut and he experienced no difficulty in operating it. His only other experience with any other jointer was in high school where he had taken a wood-working course. They had jointers for the use of the class but respondent did not remember whether he had used one of them or whether his only experience was in some group instruction given by the teacher. He had no very clear recollection about this course in which he had not been particularly interested. The only instruction which appellant had given respondent about the operation of the jointer when he had used it before was to be sure that the wood was clear and had no nails in it.

On the Sunday before, appellant had used the jointer and had set it for the deepest possible cut, about ⅜ of an inch. The jointer was fitted with a guard which operated with a spring. The guard fitted over the blades and was pushed aside by the width of the board which was being cut and would spring back over the blades on the board being removed. The guard was supported by a hexagonal stem which fitted into a hexagonal hole. Appellant had removed the guard because he was planing some very wide boards and when he replaced it he set the guard away from the blades so that the spring could not bring it over them. He also left the table set for the deep cut as he had been using it.

Appellant had told respondent to use any of the tools in the workshop and he testified that he knew that respondent might use the jointer in the course of his work. There is a gauge on the side of the jointer which indicates the depth of the cut for which the jointer is set.

On the Tuesday afternoon in question respondent decided to use the jointer to cut down the thickness of the redwood boards. The day was dark and it was raining. The only provision for artificial light in the workshop was by attaching a light to the same cord which furnished the power to operate the jointer. Respondent had observed that the current was not strong enough to operate a light and the jointer at the same time; when the motor was started the light became very dim and almost went out. So he did not put on a light. He saw that the guard was not over the blades and attempted to force it over but could not do so. He did not know that the guard was set in a hexagonal hole and could be adjusted over the blades by taking it out and replacing it at the proper angle. He therefore decided that the guard was broken. As he looked down on the jointer from a stand-

ing position he did not observe that the jointer was set for a very deep cut. It appeared to him to be set for a very shallow cut, just about the same as when he had used it the year before. He did not know of the gauge on the side of the jointer. Appellant had not shown it to him and he did not see it.

He decided that he could use the machine safely without the guard by taking the rear end of the board in his right hand and using a piece of wood about 14 inches long to press on the front end of the board with his left hand, thus keeping the left hand away from any danger of contact with the blades. He did this and when he brought the front end of the board against the rotating blades. the blades kicked the board back, this flipped the piece of wood out of his left hand and the left hand dropped onto the rotating blades. His third and fourth finger tips were cut off and his thumb and index finger injured.

After the accident appellant made the following statement to respondent: ''He said that he left the machine in a bad position for me to operate, and he said the cut was too deep, which made the board kick out. . . . He felt like he was guilty of cutting the fingers off himself, his fault . . . he said he left the guard open, said he had it off and he just put it back in place but he didn't put it in over the cutter.''

We have stated the facts so fully because the principal contentions of appellant relate to the sufficiency of the evidence. In doing so we have stated that evidence most favorable to respondent as we are required to do in support of the judgment. We need hardly refer to the accepted rule that the evidence on appeal must be construed most strongly in respondent's favor and every reasonable inference that can be drawn therefrom in support of the judgment must be indulged.

It is agreed by the parties that respondent was a business invitee of appellant. ▮ ''The invitor's responsibility is not absolute but he is 'required to use ordinary care for the safety of the persons he invites to come upon the premises. If there is a danger attending upon such entry, or upon the work which the person invited is to do thereon, and such danger arises from causes or conditions not readily apparent to the eye, it is the duty of the owner to give such person reasonable notice or warning of such danger.' '' (*Hinds* v. *Wheadon*, 19 Cal.2d 458, 460-461 [121 P.2d 724].) ▮ Similarly when one supplies machinery for the use of such in-

vitee the invitee has "a right to expect that the apparatus furnished him for that purpose was in reasonably safe condition. ■ One who supplies a chattel for another to use for the supplier's business purposes is under a duty 'to exercise reasonable care to make the chattel safe for the use for which it is supplied' . . ." (*Mondine* v. *Sarlin*, 11 Cal. 2d 593, 597 [81 P.2d 903].)

■ Here we have the admission of the appellant that knowing that the jointer might be used by the respondent he left it "in a bad position for (him) to operate . . . the cut was too deep which made the board kick out. . . ." With such an admission and on the other facts of the case the jury could reasonably find that appellant did not "exercise reasonable care to make the chattel safe for the use for which it is supplied."

Appellant argues however that the defects in the machine were obvious and hence no duty was violated by him since the "owner is entitled to assume that such invitee will perceive that which would be obvious to him upon the ordinary use of his own senses." (*Shanley* v. *American Olive Co.*, 185 Cal. 552, 555 [197 P. 793].) The fact that the guard was not over the blades was obvious, but appellant himself had used the machine without the guard and that was the very reason that it was not in its normal position. Having used it himself without the guard the jury could reasonably conclude that appellant might expect respondent to do the same when he found the guard in a position where he could not force it to cover the blades. The real danger lay in the fact that the machine was set for a deep cut which, in appellant's own words, "made the board kick out." Whether this constituted a danger which would be obvious to respondent upon the ordinary use of his own senses presented a fact question for the jury. The machine was in court and was seen and inspected by the jury. They could test the respondent's testimony that the machine appeared to him to be set for a shallow cut by standing over it themselves and looking down from a position similar to that occupied by respondent. With the machine before them they were in the best position to determine whether the depth of the cut for which it was set would or would not be obvious to one in respondent's situation upon the ordinary use of his own senses. They must have answered this question in respondent's favor and we cannot say that the evidence does not support their conclusion.

Appellant argues that respondent was guilty of contributory negligence as a matter of law (1) in using the machine without the guard and (2) in not observing that the machine was set for a deep cut.

An appellate court can only say that a plaintiff is guilty of contributory negligence as a matter of law "where there is no room for reasonable minds to differ and the conclusion that he was guilty of negligence is the only one that can rationally be drawn from the evidence." (*Terrell* v. *Key System*, 69 Cal.App.2d 682, 689-690 [159 P.2d 704] ; *Dwelly* v. *McReynolds*, 6 Cal.2d 128, 133 [56 P.2d 1232].) Whether a person of ordinary prudence, believing the guard was broken as respondent did, would have undertaken to use the machine, was a question for the jury's determination.

We have already discussed to some extent the failure of respondent to observe that the machine was set for a deep cut. The gauge was not seen by him nor did he know of its existence. Except for a very casual experience with jointers when he was 13 or 14 years old in a high school course of which he had no very clear recollection respondent's only experience was in previously operating this machine with no untoward incident. He did not even know that when the machine was set for a deep cut it would have a tendency to kick out a board. In high school he had once seen a board kicked out of a jointer but he did not know what caused it. Whether he should have examined the machine more closely, or whether under the circumstances he should have attached and lighted an electric light were also questions for the jury. We cannot say that the facts compelled the conclusion as a matter of law that respondent was guilty of contributory negligence.

Appellant also claims that in using the machine without the guard respondent assumed the risk of his injury. (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158 [265 P.2d 904].) That case furnishes its own reply to this argument. The court said in that case at page 162 that "the elements of the defense of assumption of risk are a person's knowledge and appreciation of the danger involved and his voluntary acceptance of the risk." Here respondent knew that the guard was not working but the jury could find that he had no knowledge and appreciation of the danger in proceeding without its protection as he did. He testified that he held the board down with another stick "so I wouldn't get my left hand into the cutter." It is true that in high school respondent had been told never to use a jointer without the guard,

but whether he had knowledge and appreciation of the danger involved and voluntarily assumed the risk was properly a jury question.

Finally appellant objects to the introduction in evidence of two photographs of the workshop. They were offered to show the windows in this building, as an aid to the jury in determining the amount of visibility inside on the afternoon in question. Appellant claims because they showed a portion of a swimming pool as well they had a tendency to prejudice the jury. The pictures of the workshop were relevant and the fact that they showed part of the swimming pool cannot be said to have prejudiced appellant since the verdict was in no sense excessive for the damages suffered.

Judgment affirmed.

Nourse, P. J., and Kaufman, J., concurred.