[S. F. No. 20249. In Bank. Dec. 31, 1959.]

PETER G. FLOREZ, Respondent, v. GROOM DEVEL-
OPMENT COMPANY, INC. (a Corporation) et al.,
Appellants.

848

Carroll, Davis, Burdick & McDonough and Richard B. McDonough for Appellants.

Naphan & Harbaugh, Lewis F. Sherman and Alfred R. Naphan for Respondent.

PETERS, J.—Plaintiff, Peter G. Florez, an employee of the painting subcontractor on a job on which defendant Groom Development Company was the general contractor, brought this action against the general contractor and its owner to recover damages for injuries plaintiff sustained on the job. The jury returned a verdict in favor of plaintiff and against both defendants in the amount of $32,500. Defendants' motion for a judgment notwithstanding the verdict and for a new trial were denied. Defendants appeal from the judgment entered on the verdict.

The facts are as follows: In January of 1957, the Groom Development Company was the general contractor for the construction of a subdivision in Oakland. Plaintiff, a sheet rock finisher and taper, was an employee of the painting subcontractor, Paul Johnson. On January 7, 1957, plaintiff was assigned by his foreman to work on the interior of one of the houses under construction. As far as he knew, on that day, plaintiff was the only mechanic working on that house. One Palmer, a laborer employed by Groom Development Company, did some cleaning up work in and around the house during the morning of January 7th, but plaintiff did not see him around in the afternoon. In the course of his work, plaintiff was required to use a paste requiring water as one of its ingredients. He had mixed a batch of this paste at his employer's shop before he started work on the house in question on January 7th, but ran out of paste at about 3 p. m. It was necessary to mix up another batch, but he needed water for that purpose. That day, while eating lunch, he had observed a water faucet on the outside of the house on which

he was working. So far as he knew, and so far as the evidence shows, this was the only water available in the vicinity. Plaintiff took two empty 5-gallon cans, walked outside the house and over to where the faucet was located to get some water. The plumbing subcontractor had dug a ditch which separated the faucet from the adjoining area. This ditch paralleled the garage wall of the house. It was about 5 feet deep and about 2 feet across. The dirt excavated from the ditch had been thrown up on the side of the ditch away from the garage, forming an embankment. At .the point where the faucet was located and leading directly to it the plaintiff saw a 4 by 6-inch plank about 4 or 4½ feet long extending across the ditch. He noticed that one end of the plank had been placed on the foundation of the garage and the other in a depression in the embankment. He placed one of the cans on the ground, held onto the other, and proceeded to step onto the plank with both feet, one ahead of the other. As he reached down to turn on the water preparatory to filling the can he felt the plank behind him give way and he fell into the ditch. The plank fell with him. He suffered severe injuries. Defendants do not attack the judgment as being excessive.

Plaintiff was taken to the hospital by Palmer, an employee of Groom Development Company. On the way to the hospital Palmer told plaintiff that he had been directed by his foreman to place the particular plank used across the ditch, which he had done, although he knew that it was unsafe.

Merlin Groom, secretary-treasurer of defendant company, testified that his company was the general contractor on the job and also did the carpentry work; that the Groom Development Company hired laborers to work for it to clean up around the job and, under the direction of the foreman of Groom Development Company, to assist the subcontractors; that on January 4 and 7, 1957, Leon Palmer was so employed by Groom Development Company; that the foreman for Groom Development Company was one Harold Phifer; that the witness knew that around a construction job it was standard procedure to use 2 by 10-inch or 2 by 12-inch planks to walk upon, and that such sized planks were safer than 4 by 6-inch planks. It should be noted that the wider planks would not only give a wider area upon which to walk, but, obviously, would furnish a better base upon which to rest.

Leon Palmer testified that he was an employee of Groom Development Company; that he took orders only from Harold

Phifer, the foreman of that company; that he was paid by the company; that he took no orders from subcontractors, although on orders from Phifer he would sometimes help the subcontractors. Palmer also testified that on the Friday before the accident (the accident happened the next Monday) he had been directed by Phifer to aid the painters in putting up some staging outside the house where the accident subsequently occurred. This staging was to be used so that the painters could paint the exterior of the house. It consisted of two 6-foot high saw horses owned by Groom Development Company. In order to have a foundation upon which to rest the legs of one of the saw horses, Palmer placed the 4 by 6-inch plank across the ditch, with one end on the foundation of the garage and the other end on the embankment created by the construction of the ditch. In order to keep the plank level he cradled out of the dirt a depression in which that end of the plank was placed. He stated that he knew that the 4 by 6-inch plank was not safe and that a 2 by 10-inch or a 2 by 12-inch plank was customarily used for such purposes, but he was afraid to use the wider plank, although such planks were available, because he had been told by the foreman of Groom Development Company that he would be fired if he used the larger plank for such a purpose. He was directed by Phifer to use the particular plank employed by him. After the staging had been set up, Palmer left the immediate area to do some further work and had nothing further to do with the painters, and, in particular, had nothing to do with the removal of the staging. He saw the painters removing the staging Friday night, but he did not know whether they also removed the plank. On Monday, immediately after the accident occurred, on the orders of his foreman to take plaintiff to the hospital, he returned to the scene of the accident, and saw the very same plank he had placed across the ditch on Friday, in the ditch. The bank where the plank had rested, consisting of what he called "loose dirt," was caved in.

Werner Feldhaus, Jr., called as a witness for defendants, testified that he was employed, as was plaintiff, by the subcontractor Paul Johnson. He also testified that on Friday, January 4, 1957, he found it necessary to erect some staging so that the exterior of the house in question could be painted. He was positive that he and the foreman for Johnson put up the staging and placed the plank across the ditch. Palmer had nothing to do with this task. The plank in question was a 2 by 10-inch or 2 by 12-inch plank, not a 4 by 6-

inch plank. The laborer (Palmer) dug out the dirt on the bank to make the depression into which the plank was placed, but Palmer had nothing to do with selecting the plank or placing it across the ditch. After the witness and the other painter finished painting the exterior of the house on Friday afternoon, they removed the staging, including the plank. When the witness left the area on Friday afternoon there was no plank across the ditch. The witness had no idea who put the plank across the ditch on Monday.

On this evidence, plus the medical evidence, the jury brought in a verdict of $32,500.

The two major contentions of appellants are that, as a matter of law, the implied finding of negligence on their part is totally unsupported, and that, as a matter of law, the evidence shows that respondent was contributively negligent. There is no merit to either contention.

Both of these issues, normally, present only factual questions. In the frequently cited case of *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183], it is stated: ''In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. [Citing cases.] To establish the defense of contributory negligence as against the verdict of a jury, the evidence must be such that the appellate court can say that there is no substantial conflict on the facts, and that from the facts reasonable men can draw but one inference, which inference points unerringly to the negligence of the plaintiff proximately contributing to his own injury. [Citing cases].'' (See also *Fennessey* v. *Pacific Gas & Elec. Co.,* 20 Cal.2d 141, 145 [124 P.2d 51]; *Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 219 [157 P.2d 372, 158 A.L.R. 872].)

Respondent as an employee of a subcontractor was admittedly an invitee of appellants, the general contractor. (See cases collected 35 Cal.Jur.2d, p. 663, § 147.) In *Pauly* v. *King,* 44 Cal.2d 649, 653 [284 P.2d 487], this court stated

the duty involved in such a relationship as follows: "An employee of a subcontractor occupies the relationship of an invitee to the main contractor. [Citing cases.] 'The applicable general principle is that the owner of the property, insofar as an invitee is concerned, is not an insurer of safety but must use reasonable care to keep his premises in a reasonably safe condition and give warning of latent or concealed peril. He is not liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.' (*Brown* v. *San Francisco Ball Club, Inc.*, 99 Cal.App.2d 484, 486 [222 P.2d 19].)"

 On the issue of negligence, the evidence viewed most strongly in favor of respondent shows that Palmer was employed by the appellants, that is, by the general contractor, to clean up around the job and to perform other tasks. Part of his job was, upon orders from the foreman of the general contractor, to assist the subcontractor on specific jobs. Thus, in assisting the subcontractor, Palmer was the employee of the general contractor who paid him, controlled what he did and how he did it. Palmer was instructed by the foreman of the general contractor to assist the painters to erect the staging, and was instructed by that foreman to use the particular 4 by 6-inch plank involved, even though other wider planks were available, and even though wider planks are customarily used for such purposes. Palmer had been told by the foreman of the general contractor that he would be fired if he used the wider planks for such purposes. Palmer placed the plank across the ditch at a spot where one end of the plank was leading to and almost directly under the water faucet. Palmer knew, and therefore the general contractor knew, that such a plank used to walk on was unsafe and was not commonly used for that purpose. Palmer knew, or should have known, and through Palmer the appellants knew, that the plank if left in the position in which it was located would constitute an implied invitation to any of the workmen on the job to use it to walk on if they needed water. (*Johnston* v. *De La Guerra Properties, Inc.*, 28 Cal.2d 394, 399 [170 P.2d 5]; *Danisan* v. *Cardinal Grocery Stores, Inc.*, 155 Cal. App.2d 833, 837 [318 P.2d 681]; *Gastine* v. *Ewing*, 65 Cal. App.2d 131, 141 [150 P.2d 266].) Palmer placed the other end of the plank on the dirt thrown up by the plumber when he dug the ditch, after first scooping out some of the dirt so that the plank would be level. Palmer knew, and therefore appellants knew, that the bank was of loose dirt.

Appellants place much reliance on the evidence that the plank was put down to assist in holding up the staging. They also rely heavily on Feldhaus' testimony that the plank was removed Friday afternoon. The jury obviously disbelieved Feldhaus. If that testimony had been believed, it was Feldhaus, a fellow employee of the subcontractor for whom respondent worked and not Palmer who selected and put down the plank. If the story told by Feldhaus had been believed to the effect that he removed the plank Friday afternoon, then appellants would not be liable because then there was no evidence to connect appellants with the plank. But Feldhaus' testimony was not believed. In many respects his testimony was directly contradicted by the testimony of Palmer. Palmer testified that he placed the plank across the ditch on the orders of appellants' foreman, and that that foreman selected the plank. Feldhaus testified that he selected and placed the plank across the ditch. Palmer testified that the plank was a 4 by 6-inch plank. Feldhaus testified that it was a 2 by 10 or 2 by 12-inch plank. The jury believed Palmer as to these matters. The jury disbelieved Feldhaus. It was the jury's function to pass on the credibility of the witnesses.

Although there is no direct evidence to contradict Feldhaus' testimony that he removed the plank on Friday afternoon, there is the evidence of Palmer that he put the plank across the ditch on Friday and that the same plank was in the ditch on Monday immediately after the accident. There is the testimony of respondent that the plank across the ditch on Monday was a plank of the description and type that Palmer had placed there Friday. Thus, the testimony of Feldhaus on this point is contradicted by the circumstantial evidence. But even if uncontradicted, in view of the fact that the jury had found that Feldhaus had testified falsely as to other facts, it could find that he had testified falsely as to this fact.[1]

Thus, under the evidence, the jury could, and apparently did, find that Palmer placed the plank there on Friday, that a staging was erected on it, and that the staging was removed on Friday, but the plank was left in place where it remained until the accident on Monday. The jury could also find, and apparently did, that Palmer knew or should have known (and therefore appellants knew or should have known)

[1]Section 2061, subdivision 3, of the Code of Civil Procedure requires that in proper cases the jury must be instructed: ''That a witness false in one part of his testimony is to be distrusted in others.'' The jury was so instructed in the instant case.

that the plank if left in place would constitute an implied invitation to use it to walk on in order to reach the faucet. The appellants, under these circumstances, were under a duty to remove the plank after it had served its purpose, or to warn invitees of the dangers involving in using it. They had created the dangerous condition. [ Moreover, the invitor, under the law, is required to protect his invitees not only from dangers created by him, or of which he has actual knowledge, but from those dangers which by the use of reasonable care he should have had knowledge. (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 233 [282 P.2d 69].) And lack of actual notice is no defense if there was an opportunity to inspect, and such inspection would have revealed the dangerous situation. (*Blumberg* v. *M. & T. Incorporated*, 34 Cal.2d 226, 229 [209 P.2d 1] ; *Mondine* v. *Sarlin*, 11 Cal.2d 593, 597 [81 P.2d 903] ; *Dobbie* v. *Pacific Gas & Electric Co.*, 95 Cal.App. 781, 790 [273 P. 630].) In view of the fact that Palmer knew that the plank was unsafe, that he knew or should have known that if left in place it constituted an implied invitation to workmen to walk upon it to get to the water faucet, and in view of the fact that he knew the staging had been removed Friday afternoon, and was in the general area Monday morning and could have seen whether or not the plank had been removed, and in view of the duty of the general contractor towards invitees, the appellants were chargeable with notice that the plank had not been removed. Under these circumstances there is ample evidence to sustain the implied findings that appellants were negligent and that such negligence was a proximate cause of the accident.

The next contention of appellants is that the evidence, as a matter of law, shows that respondent was contributively negligent. This question, normally, is one of fact and it was a question of fact in this case.

As already pointed out, the plank constituted an implied invitation to the workmen on the job to use it to reach the water faucet. It is well settled that, where an invitation, express or implied, extends to and includes a defective portion of the premises, the invitee may assume that he may use the area to which the invitation extends without danger. (*Johnston* v. *De La Guerra Properties, Inc.*, 28 Cal.2d 394, 402 [170 P.2d 5] ; *Woodard* v. *Bank of America*, 130 Cal.App. 2d 849, 853 [279 P.2d 1018] ; *Gastine* v. *Ewing*, 65 Cal.App.2d 131, 142 [150 P.2d 266] ; *Locke* v. *Red River Lbr. Co.*, 65 Cal.

App.2d 322, 326 [150 P.2d 506]; *Harris* v. *Joffe*, 28 Cal.2d 418, 424 [170 P.2d 454]; *Hodge* v. *Weinstock, Lubin & Co.*, 109 Cal.App. 393, 397 [293 P. 80].) ▆▆▆ An invitee, while properly using the portion of the premises to which the invitation extends, is not required to be, nor is he held to the duties of, an inspector. (*Siegman* v. *Fetters*, 59 Cal.App. 114, 116 [210 P. 49]; *Miller* v. *Pacific Constructors, Inc.*, 68 Cal. App.2d 529, 545 [157 P.2d 57].) Certainly ''an invitee is not required to look for hidden traps.'' (*Billeter* v. *Rhodes & Jamieson, Ltd.*, 104 Cal.App.2d 137, 144 [231 P.2d 93].)

▆▆▆ It is also the law that a workman on the job, doing the job he was hired to do, is not required to exercise the same quantum of care that may be required of other invitees. ▆▆▆ As was said in *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, at page 239 [282 P.2d 69]: '' '. . . where a person must work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case. (*Barboza* v. *Pacific Portland Cement Co.*, 162 Cal. 36, 40 [120 P. 767] . . .' '' (See also *Emery* v. *Pacific T. & T. Co.*, 43 Cal.App.2d 402, 409 [110 P.2d 1079]; *Miller* v. *Pacific Constructors, Inc.*, 68 Cal.App.2d 529, 545 [157 P.2d 57]; *Mecham* v. *Crump*, 137 Cal.App. 200, 204 [30 P.2d 568].)

▆▆▆ In the instant case, appellants assume that their negligence, if any, was in using a plank that was too narrow or too short, and contend that these defects were clear and obvious, and should have been seen by respondent. It is urged that the very facts relied upon by respondent to support the inference of negligence also demonstrate that respondent was contributively negligent. This argument proceeds on the theory that the quantum of care required of the invitor and invitee are identical. That is not the law. Even if the only negligence involved was in furnishing a plank that was too short or too narrow, or both, the question as to whether respondent as a workman-invitee acted reasonably in using it was a question of fact for the jury. The cases already cited support this principle. It must not be forgotten that respondent's duties as an employee required him, in the course of his employment, to use water, and, so far as he knew, the faucet in question was the only place where water was available. The dangerous plank was the only means furnished to reach that faucet. The jury was entitled to balance the respondent's necessity against the danger, even if it be as-

sumed that it was an apparent one. This was a factual issue. (*Douglass* v. *Douglass,* 130 Cal.App.2d 609, 614 [279 P.2d 556, 46 A.L.R.2d 1370] ; *Foster* v. *A. P. Jacobs & Associates,* 85 Cal.App.2d 746, 754 [193 P.2d 971] ; *Mariotti* v. *Berns,* 114 Cal.App.2d 666, 673 [251 P.2d 72].)

Thus, even if it be assumed that the only negligence involved, or that could have been involved, was in furnishing a plank that was too short or too narrow, or both, and that such condition was readily apparent, the jury properly found for respondent. But the evidence shows another defect that was not so apparent. Palmer knew that the bank he used as one support for the plank was composed of loose dirt. He scooped out of this dirt a depression into which to place the plank. That area was caved in after the accident. Obviously Palmer knew, or should have known, and through him appellants knew or should have known, that soil of that consistency was not safe if pressure were placed upon it. The jury could, and we may properly assume did, find that the proximate cause of the accident was the negligence in placing one end of the plank in soil that would not support the plank if pressure were placed on it. The fact that the plank had served to support the staging used by the painters does not indicate, as a matter of law, that the plank must have been placed in solid soil. From the pictures introduced into evidence and from the evidence describing the placing of the staging, it is apparent that the staging could have been erected so that the major pressure from the staging was on the end of the plank placed on the solid foundation of the garage. It was not until respondent by stepping on the other end of the plank exerted pressure on that end that the loose soil gave way.

It cannot properly be argued that respondent should have examined the bank, and thus should have discovered the insecure nature of the soil. When he saw the faucet and the plank he had a right to assume that the plank had been placed there as a walkway to get to the faucet. He had a right to assume that whoever had placed the plank there had used reasonable care in doing so. He certainly had a right to assume that the one placing the plank there had not deliberately created a trap by placing one end of the plank on an insecure foundation. While respondent was chargeable with seeing the obvious, he was not under a duty to examine the plank with minute care. In making what was a reasonable use of the plank, and in using it for the purpose for which it apparently was intended, the respondent had a right to assume that

it was in a reasonably safe condition. While he was under a duty to use reasonable care for his own safety and make reasonable use of his faculties to avoid injury to himself, he was under no duty to be on the constant lookout for danger. Even if the defect were one that might be visible to a person who was looking for such a defect, he was not contributively negligent as a matter of law in failing to see and avoid the defect. Whether he made reasonable use of his faculties and whether he should have observed the nature of the soil were questions of fact and not of law. (See *Peters* v. *City & County of San Francisco,* 41 Cal.2d 419, 424 [260 P.2d 55]; *Gentekos* v. *City & County of San Francisco,* 163 Cal.App.2d 691, 702 [329 P.2d 943].)

 The appellants also complain of the refusal of the trial court to give a proffered instruction on assumption of risk, and complain of the giving of an instruction that the doctrine was not involved in the case. The record shows that appellants did not plead assumption of risk as a defense in their answer. It was not raised as an issue at the pretrial conference and the pretrial order did not include that issue. During trial appellants moved to amend their answer to set up assumption of risk as an affirmative defense. The trial court denied the motion as being too late, and refused to give the proffered instruction. The rulings were all correct. The denial of the motion to amend was well within the discretionary powers of the trial court. The proffered instruction did not apply to any issue disclosed by the evidence. The evidence raised the issue of possible contributory negligence but not assumption of risk. The two doctrines are not identical. The court gave proper instructions on contributory negligence, and properly ruled out the defense of assumption of risk.

 As was said in *Mula* v. *Meyer,* 132 Cal.App.2d 279, 287 [282 P.2d 107]: "The law recognizes that the defenses of assumption of risk and contributory negligence are separate and distinct. Here the trial court properly ruled out the doctrine of assumption of risk, but permitted the jury to consider the defense of contributory negligence. This is in accord with the law applicable to the invitor-invitee relationship."

Aside from the issue of contributory negligence there was no evidence that respondent voluntarily accepted a risk with knowledge and appreciation of that risk. Thus the instruction was properly refused.

The other claimed errors are of a minor nature. They could not possibly have been prejudicial.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., and White, J., concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons stated by Mr. Justice Hanson in the opinion prepared by him for the District Court of Appeal in *Florez* v. *Groom Development Co.*, (Cal.App.) 340 P.2d 666.

Appellants' petition for a rehearing was denied January 27, 1960. Spence, J., and McComb, J., were of the opinion that the petition should be granted.