[Civ. No. 9120. Third Dist. Dec. 9, 1957.]

VINETTA DANISAN, Appellant, v. CARDINAL GROCERY STORES, INC. (a Corporation), et al., Respondents.

C. Ray Robinson and Ronald G. Cameron for Appellant.

Rich, Fuidge & Dawson, Charles C. Dawson, Jr., and Peters & Peters for Respondents.

PEEK, J.—This record presents an appeal from judgments based on orders of nonsuit for damages for injuries sustained by plaintiff when she slipped and fell while shopping in the Plumas Food Market in Marysville. The motion for nonsuit was denied as to the defendant Manuel Rose, and thereafter the action was dismissed without prejudice as to him.

The building in which the accident occurred was leased to the three defendants—Cardinal Grocery Stores, Inc., a corporation, referred to herein as "Cardinal"; Mario Del Pero, Hugo Del Pero and Gus Mondon, doing business as Del Pero-Mondon Meats, hereinafter referred to as "Del Pero-Mondon"; and Manuel Rose. The defendants sold groceries, meats, and produce respectively. Each defendant had a lease which covered a particular area of the building and provided among other things that the lessee should have ". . . the right of ingress and egress in, to, upon, through and over all parts and portions of said property as may be necessary to carry on and operate . . . [the particular department] for which this lease is given and made, and other conveniences as may be furnished and supplied in and upon said premises for the general use of all tenants hereof and/or patrons of the business conducted thereupon."

The defendant Del Pero-Mondon occupied the northerly portion of the building. A meat display counter extended from the front to the rear of the building. Behind the counter was a meat-cutting room, as well as refrigerated storage rooms for that department. The center portion of the building was devoted to the grocery area. Storage space for this department was at the westerly side of the building and at the southeast corner thereof. The produce area was located in the southwesterly corner of the building. Immediately to the east of the produce area was a 5-foot partition; however nothing on the north side of the produce area prevented free passage between it and the grocery area. The two customer entrances were at the west or front of the building, one opening into the grocery area and the other into the produce area.

When called as an adverse witness under section 2055 of the Code of Civil Procedure, the manager of the defendant Cardinal testified that there was parking space in front of the building which was used by the customers of all three defendants; that the only entrance for customers was through the two doorways as previously noted; that there was no line, partition or other visible indication of division of the three departments; that there was free movement from one to the other; that customers paid each department for articles purchased but that the employees at the checkout stands would carry out any article purchased from any of the three; that there was a neon sign on the building reading "Plumas Food Market"; that for the purpose of economy the three defendants usually advertised under the common heading of "Plumas Food Market" with separate boxes in the ads for each defendant, and each paid for its own space; that the cost of heating and cooling the building, as well as the maintenance of the sign, was prorated among the three lessees; that each lessee followed an imaginary line in maintaining and keeping clean the area in which its business was conducted, although the area in front of the meat department was always swept by employees of Cardinal and never by employees of Del Pero-Mondon; and that it was to their mutual benefit to have the three departments in the same building in that the more people attracted to the premises, the greater the volume of business for each department. The defendants, Hugo Del Pero and Manuel Rose, who were likewise called under section 2055, in general testified to the same effect as Mr. Arnoldy, the Cardinal manager. Rose additionally testified that his wife and son helped him in the store; that on the day of the accident he had swept the produce area at approximately 4 p. m.; that his wife had previously left the store; that he then took over the checkout stand; and that his son was restocking shelves and helping carry out groceries and produce for the customers. He further testified that the parking lot and sidewalks were policed solely by the employees of Cardinal who also were the only persons who opened and closed the premises.

The plaintiff testified that it was her intention upon entering the store to shop in all three departments. Actually she first bought meat, then went to the Cardinal area where she made certain purchases of groceries and finally went to the produce section. While making her purchases there at approximately 4:30 p. m., she slipped on some substance, pre-

sumably an onion skin, and suffered the injuries for which she sought damages. The point where she fell was in the main aisle of the produce area and nearly opposite one of the two customer entrances to the building.

As noted in Prosser on Torts (2d ed.) section 78, page 458, what the author refers to as the "area of invitation" will of course vary with the circumstances of the case. He further notes that the invitation extends to the entrance of the property and to a safe exit after the purpose which has brought the invitee is concluded, and it extends to all parts of the premises to which the purpose may reasonably be expected to take him. And in Restatement of Torts, section 343, page 940, it is said that in determining ". . . the area included in a business invitation, the nature of the business to be transacted is of great importance." In line with the general rule as stated, our courts have held: "The invitation of a proprietor extends not only to all parts of the premises which the patron expressly is invited to use, but also to such parts as he or she is impliedly invited to enter, and the invitation also extends to those portions of the premises where the invitee, under the circumstances and conditions of his invitation, would naturally be likely to go." (*Gastine* v. *Ewing*, 65 Cal.App.2d 131, 141 [150 P.2d 266].)

The court therein further held that the determination of the question of ". . . whether the invitation, express or implied, included that part of the premises where the injury occurred is generally not one of law. On the contrary, it is usually a question of fact for the determination of the court or jury." (P. 141.)

The defendants argue, however, that even if it could be found that they invited the plaintiff to use the produce market as well as their own particular departments, nevertheless at the time of the accident she had concluded her purchases of meats and groceries, had no intention of returning to those departments, and that she was then acting solely for the benefit of herself and Rose. Furthermore, since they had no right to enter upon the area occupied by another and to clean the same, they owed no duty to plaintiff while she was shopping in the produce area. We cannot agree with such arguments. Although plaintiff testified that she had completed her purchases of meat and groceries and that the produce she was buying would have completed the purpose for which she entered the building, yet it could not be said as a matter of law that she had, for those reasons,

ceased to be the invitee of the butcher shop and the grocery department since it is obvious that it was such a broad invitation that had been extended to her to come into the building that the jury could hold the purposes of the invitation and of her acceptance through entrance upon the premises had not been exhausted merely because in her mind at the moment she fell she did not intend to make further purchases.

From the record it would appear that here, as in the case of *Woodard* v. *Bank of America*, 130 Cal.App.2d 849 [279 P.2d 1018], it would be difficult to attribute to the joint operation of the defendants any purpose other than that by their concerted action they intended to and did invite the public generally to patronize the Plumas Food Market as such; that the invitation was not limited to the area occupied by any one defendant to the exclusion of the others, but to the contrary was an invitation by all defendants and extended to all portions of the premises where plaintiff would likely shop. Such conduct was entirely consistent with the lease of each defendant which gave to him the right to use all the open space in the market in common with the other defendants. In fact such use was essential to the defendants' common, over-all plan of operation and hence it could be found that defendants knowingly and deliberately furthered the browsing habits of the ordinary shopper.

■ The second argument of defendants is equally untenable. In the case of *Biondini* v. *Amship Corp.*, 81 Cal. App.2d 751 [185 P.2d 94], similar contentions were made. There the plaintiff, a business invitee, brought an action against several defendants for personal injuries. The trial court granted defendants' motion for a nonsuit and plaintiff appealed. In reversing the orders of nonsuit the reviewing court held that the lack of ownership or legal right to maintain or repair property, while important, is not conclusive; that one might expressly or impliedly adopt the property of another and invite others to use it, and if they do, the invitor owes to such invitee a duty to exercise reasonable care to see that the property is safe. The court then concluded that whether or not they had done so was a question for the jury. The rule therein expressed is equally applicable to the facts in the present case.

■ And lastly it is true that to impose liability for injuries suffered by an invitee due to the condition of the premises, the invitor ". . . must have either actual or con-

structive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it. . . ." (*Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 806 [117 P.2d 841]; see also *Hale* v. *Safeway Stores, Inc.,* 129 Cal.App.2d 124, 128 [276 P.2d 118].) But as the court there also held, ". . . the question of whether the condition which caused the injury had existed so long as to be discoverable by the store owner within a reasonable time is for the jury." (P. 807.) Again, in *Louie* v. *Hagstrom's Food Stores, Inc.,* 81 Cal.App.2d 601, 607 [184 P.2d 708], the court held: "It is generally a question of fact for the jury as to whether, under all the circumstances, the defective condition existed long enough so that a reasonable man exercising reasonable care would have discovered it . . . [and] a person operating a grocery and vegetable store in the exercise of ordinary care must exercise a more vigilant outlook than the operator of some other types of business where the danger of things falling to the floor is not so obvious." (*Hale* v. *Safeway Stores, Inc., supra.*)

It necessarily follows that when the evidence in the instant case is viewed in light of the well-established rule relative to nonsuits (*Blumberg* v. *M. & T. Incorporated,* 34 Cal.2d 226 [209 P.2d 1]), and the rules heretofore set forth, there was ample evidence to warrant submission of the cause to the jury.

The judgments are reversed.

Schottky, J., concurred.

VAN DYKE, P. J.—I dissent.

I think we do not reach the question of the liability of Cardinal and Del Pero-Mondon for the condition of the floor of the produce market in so far as liability is predicated upon the leases and the business relations set up among the lessees. I think the plaintiff failed to prove a sufficient case of negligence on the part of anyone. The liability of a possessor of land—and herein I refer to Cardinal, Del Pero-Mondon and Rose—for bodily harm caused to business visitors, can be well stated by quoting from Restatement of the Law of Torts, section 343:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and . . . invites or permits them to enter or remain without exercising reasonable care to make the condition reasonably safe, or to give a warning adequate to enable them to avoid the harm. . . ."

Even though it is generally a question of fact as to whether negligence has been made out in cases such as this, nevertheless there must be a factual showing by the plaintiff from which the jury can reasonably infer that the conditions of liability existed. Putting it another way, if the proof extends no further than to show slipping upon a foreign matter on the floor a prima facie case of land possessor liability to invitees has not been made out. In such a case there is nothing to go to the jury.

Under the evidence here the following was shown: Appellant, having shopped at the meat counter and in the grocery, walked into the produce area and, walking normally, went directly to the south part of that area where carrots were displayed. There she picked up a bunch of carrots; then, wanting to obtain a bag in which to carry them, she put the carrots down and walked toward the bag rack. On the way there she slipped and fell. She said that the time she had been in the produce area was a matter of a few seconds. A Doctor Riggs was in the produce area for a minute or two before he saw appellant fall. He saw nothing on the floor before the fall. The only other witness of the accident was Rose, who was called under section 2055 and testified that he had swept the floor about 4 o'clock, some 20 or 30 minutes before the accident, and that the floor was clean after sweeping and he saw nothing on it before appellant fell. There were a number of shoppers in the area. Rose said that it was neither a slack period nor a rush period, but he and his clerks were busy checking out purchases and carrying parcels to parked cars. All three witnesses testified that the only thing that they found on the floor after the appellant slipped was a skid mark, made apparently by her left heel, which was about 6 to 10 inches long and a quarter of an inch wide. On her heel there was a small piece of vegetable matter about the size of a quarter of a dollar.

While "the exact time the condition must exist before it should, in the exercise of reasonable care, have been discovered and remedied, cannot be fixed, because, obviously, it varies according to the circumstances" and while "a person operating a grocery and vegetable store in the exercise of ordinary care must exercise a more vigilant outlook than the operator of some other types of business where the danger of things falling to the floor is not so obvious" (*Louie* v. *Hagstrom's Food Stores, Inc.,* 81 Cal.App.2d 601, 608 [184 P.2d 708]), nevertheless we are dealing with a lapse of time long enough to afford a reasonable inference that within that time the possessor ought to have discovered its presence. Of course, while this interval of time may be proved by circumstantial as well as by direct evidence like any other fact to be proved, nevertheless there must be some proof of a lapse of time before a jury has anything upon which to base an inference that negligence in failing to discover occurred. (There is in this case no proof of actual knowledge and nothing from which actual knowledge could be inferred.) On this question of the interval of time I think the case of *Hale* v. *Safeway Stores, Inc.,* cited in the majority opinion, goes as far as it is possible to go in submitting to a jury a set of facts as legally affording basis for an inference. But there was in that case at least definite proof of an interval of time, short though it was, and further circumstances, from which it could be inferred that a longer interval of time had elapsed after the vegetable matter had been dropped on the floor.

In this case plaintiff proved nothing more than that she slipped on foreign matter and fell. On what then can a trier of fact base an inference of any considerable lapse of time at all? The last customer ahead of appellant may have dropped it. Seconds only may have passed before appellant fell. I think there is nothing affording ground for the trier of fact to embark upon the inquiry as to whether or not a sufficient time had elapsed to support an inference of negligence. I know of no case where proof such as was offered in the case has been declared sufficient to sustain a verdict.

While the briefs on appeal herein have been confined mainly to a discussion of the liability of Cardinal and Del Pero-Mondon if Rose was liable, nevertheless the motions for nonsuit were also grounded upon want of proof of negligence and therefore, of course, this court cannot reverse judgments based upon orders of nonsuit unless negligence was shown.

I think the appellant failed to make a case for the jury against any of the defendants and, therefore, I would affirm the judgment.

A petition for a rehearing was denied January 7, 1958, and the opinion and judgment were modified to read as printed above. Van Dyke, P. J., was of the opinion that the petition should be granted. Respondents' petitions for a hearing by the Supreme Court were denied February 5, 1958. Spence, J., and McComb, J., were of the opinion that the petition should be granted.