Filed 5/18/22 (unmodified opn. attached)

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LILYAN HASSAINE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CLUB DEMONSTRATION SERVICES, INC.,<br><br>    Defendant and Respondent. | D079396<br><br>(Super. Ct. No. 37-2019-00016440-CU-PO-CTL)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed on April 22, 2022 be modified as follows:

1. On page 2, the third sentence of the second paragraph, the word "customers" is changed to "Costco shoppers" so that the sentence reads:

> While the CDS-Costco agreement may allocate responsibility and liability as a matter of contract *between those parties*, it does not limit the scope of CDS's common law duty to Costco shoppers.

2. On page 4, the first two sentences of the first full paragraph beginning with "Believing she slipped" and ending the second sentence with "damages for her injuries" are deleted and inserted with the following:

Hassaine would eventually come to believe she slipped on liquid soap that leaked out of a Softsoap twin-pack carried in the shopping cart. She sued Costco and CDS (erroneously named as Advantage Solutions, Inc.) for negligence and premises liability, seeking compensatory damages for her injuries.

3. On page 6, the third sentence of the first paragraph, the words "where its customers" are changed to "where Costco customers" so the sentence reads:

Under *Danisan, supra,* 155 Cal.App.2d 833, CDS's duty of reasonable care was not limited to its contractually defined work area, but also extended to the areas where Costco customers could be expected to shop.

4. At the first full paragraph on page 11, after the first sentence ending "to provide a safe shopping facility," add as footnote 6 the following footnote, which will require renumbering of all subsequent footnotes:

[6] CDS argues in its rehearing petition that it did not share profits and losses or exercise joint control with Costco to form a single business enterprise. Pointing to language in its agreement with Costco, CDS maintains that the two companies were separate business entities. In addition, CDS claims it did not sell any products to have "customers" of its own. Both contentions miss the mark. We use the phrase "business enterprise" in a general rather than technical sense to evaluate whether there is a special relationship giving rise to a common law duty of care. Even accepting CDS's claim that it had no customers of its own, it owed a duty of care by virtue of its special relationship with *Costco* customers. Costco customers were CDS's business invitees as persons invited to peruse CDS's sample table offerings. Although CDS is a third party contractor distinct from Costco, we readily conclude it has a special relationship with Costco customers giving rise to a duty of reasonable care.

2

5.  At the fifth sentence of the first full paragraph on page 15, the word "sample" is to be inserted between the words "its" and "customers" so that the sentence reads:

> Its lack of a contractual responsibility to maintain the property outside the 12-foot perimeter is not determinative, as CDS impliedly adopted Costco's premises and invited its sample customers to use the Costco aisles.

6.  On page 19, first sentence of the second full paragraph, the words "owes its customers" are changed to "owes them" so the sentence reads:

> A business does not ensure its customers' physical safety but nonetheless owes them "a duty to exercise reasonable care in keeping the premises reasonably safe."

There is no change in judgment.

Respondent's petition for rehearing is denied.

O'ROURKE, Acting P. J.

Copies to:  All parties

Filed 4/22/22 (unmodified opinion)

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LILYAN HASSAINE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CLUB DEMONSTRATION SERVICES, INC., <br><br> Defendant and Respondent. | D079396 <br><br><br> (Super. Ct. No. 37-2019-00016440-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E.L. Strauss, Judge. Reversed.

Law Offices of Nicholas A. Boylan and Nicholas A. Boylan for Plaintiff and Appellant.

England Ponticello & St. Clair, Barry W. Ponticello and Sarah M. Reddiconto for Defendant and Respondent.

_____

* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts C and D of the Discussion.

While shopping at the Carmel Mountain Ranch location of Costco Wholesale Warehouse Corporation (Costco) in San Diego, plaintiff Lilyan Hassaine slipped and fell on a slippery substance that she believed was liquid soap. Claiming serious injuries from the fall, she sued Costco and Club Demonstration Services (CDS), an independent contractor that operated food sample tables within the store. The trial court granted a motion for summary judgment filed by CDS, concluding that the company owed Hassaine no duty of care. In the court's view, it was dispositive that CDS's contract with Costco limited its maintenance obligations to a 12-foot perimeter around each sample table, and that Hassaine's fall occurred outside that boundary.

The trial court erred in concluding that CDS's *contract* with Costco delineated the scope of its duty of care to business invitees under general principles of *tort* law. Businesses have a common law duty of ordinary care to their customers that extends to every area of the store in which they are likely to shop. (See *Danisan v. Cardinal Grocery Store* (1957) 155 Cal.App.2d 833 (*Danisan*).) While the CDS-Costco agreement may allocate responsibility and liability as a matter of contract *between those parties*, it does not limit the scope of CDS's common law duty to customers. Although CDS protests that this outcome would impose an unreasonable duty covering the entire Costco warehouse, its argument conflates the legal question of duty and the (generally) factual question of whether that duty was breached. Despite having a duty of ordinary care, CDS would have no liability so long as its conduct was *reasonable* under the circumstances, which include the distance between CDS personnel and the hazard.

In short, CDS owed Hassaine the usual duty of ordinary care codified in Civil Code section 1714.  Breach and causation present triable factual issues here, precluding summary judgment on those grounds.  We accordingly reverse.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of October 19, 2018, Hassaine was shopping with her sister-in-law at Costco.  While walking down an aisle, she slipped and fell.  A Costco surveillance video captured the incident.[1]

Hassaine entered the aisle where she would later fall, walking beside her sister-in-law, who pushed a shopping cart.  No foreign substance appeared on the floor.  The two women stayed in the aisle for about a minute and a half, pulling out various grocery items from the refrigerated display case as they conversed.  After they moved on, a dark spot can be seen near where the cart had been located.

Over the next several minutes various people proceeded to walk through the aisle and past the dark spot, including an aproned CDS employee and a Costco employee wearing a baseball cap.  Less than seven minutes after leaving the aisle, Hassaine and her sister-in-law returned.  The sister-

---

[1]    Hassaine objected and moved to strike the surveillance video for lack of foundation, defective chain of custody, spoliation, and failure to effect proper service.  CDS responded that there was no prejudice to Hassaine where both sides had copies of the video, which was produced in discovery and had been used in multiple depositions.  In granting CDS's motion for summary judgment, the court overruled all evidentiary objections and denied Hassaine's motion to strike.  Hassaine does not challenge those rulings and instead suggests on appeal that the video *demonstrates* a triable issue of fact as to whether CDS's conduct was reasonable under the circumstances.  Accordingly, we have reviewed the video and summarize its contents in reciting the facts in the light most favorable to Hassaine as the nonmoving party.  (See *Mackey v. Board of Trustees of Cal. State Univ.* (2019) 31 Cal.App.5th 640, 647, fn. 3.)

in-law pushed the shopping cart past the spill, as Hassaine walked behind her with items in her hands. As Hassaine stepped near the spill, she fell flat on her back. Her sister-in-law helped her up. Several Costco employees arrived to assist her and wipe the floor.

Believing she slipped on liquid soap that leaked out of a Softsoap twin-pack carried in the shopping cart, Hassaine sued Costco and CDS (erroneously named as Advantage Solutions, Inc.) for negligence and premises liability, seeking compensatory damages for her injuries. CDS moved for summary judgment, arguing that it owed no *duty* to inspect or maintain the location where Hassaine fell.[2] To the extent a duty did exist, CDS maintained that Hassaine could not prove *breach* where only seven minutes elapsed between the spill and her fall. CDS also claimed Hassaine could not demonstrate that any alleged negligence *caused* her fall where she could not identify what substance caused her to slip or provide "evidence that this substance was in any way related to CDS." In other words, CDS claimed that Hassaine could not establish the essential elements of duty, breach, or causation required to prove negligence and premises liability.

Supporting its motion, CDS lodged a portion of the surveillance video, the "Agreement for Demonstration Services" between Costco and CDS, and excerpts of various depositions and discovery responses. Its lack-of-duty argument turned entirely on the Costco-CDS agreement, which named CDS as an "independent contractor" tasked with providing "demonstration and/or consumer sampling of food and non-food merchandise" within Costco warehouses. The contract defined the " 'Work Area' " that CDS had to safely maintain as "a Demo workstation and the adjacent 12 [foot] vicinity."

---

[2]     Costco also moved for summary judgment, but only CDS's motion is relevant to this appeal.

Witnesses testified that based on measurements, Hassaine fell somewhere between 16 and 17 feet from the nearest CDS sample table.

Hassaine challenged CDS on both the law and the facts. Citing *Danisan, supra,* 155 Cal.App.2d 833, she argued that CDS owed its invitees a duty of reasonable care irrespective of anything in its private agreement with Costco. Factually, she suggested there remained triable issues of fact as to whether CDS and Costco employees in practice acted as mutual agents for ensuring floor safety; whether the spill had migrated to within a 12-foot perimeter by the time she fell; and whether Costco and CDS's conduct was reasonable under the circumstances. Hassaine offered deposition testimony by several Costco and CDS employees who confirmed that CDS employees typically notified Costco of any visible spills and acknowledged that the video showed a CDS employee twice walk past the spill in the seven minutes before Hassaine fell.

Following oral argument, the court entered a written order granting CDS's motion for summary judgment, concluding Hassaine could not establish that CDS owed her any duty of care:

> "Here, Costco contracted with [CDS] to provide product demonstration services. (UMF ¶ 17.) The contract between [CDS] and Costco defines the 'work area' as the 12-foot radius of the 'Demo workstation.' (*Id*.) Thus, based upon the terms of the contract, [CDS] is reasonably responsible for the area within 12-feet of the workstation. (UMF ¶¶ 18, 19, 24.) Here, it is undisputed that the area where [Hassaine] fell was more than 12-feet away from the center of the [workstation]. (UMF ¶ 20.) Thus, based upon the undisputed material facts, [CDS] did not owe [Hassaine] a duty."

DISCUSSION

Hassaine contends the trial court erred as a matter of law in concluding that the Costco-CDS Agreement limited the scope of its duty of care. We agree. Under *Danisan, supra,* 155 Cal.App.2d 833, CDS's duty of reasonable care was not limited to its contractually defined work area, but also extended to the areas where its customers could be expected to shop. Whether CDS's conduct was reasonable under all the circumstances presents a jury question, as does whether inaction by CDS was a substantial factor in causing her fall. Accordingly, summary judgment was not proper on grounds of duty, breach, or causation.

A.     *Our Review Is De Novo.*

The purpose of summary judgment under Code of Civil Procedure section 437c "is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).) A moving defendant bears the burden to show that the plaintiff cannot establish one or more essential elements of the cause of action, or that there is a complete defense to that cause of action. (*Aguilar,* at pp. 849, 853; Code Civ. Proc., § 437c, subd. (*o*)(2).) If the defendant meets this burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).) We review an order granting summary judgment de novo, "liberally construing the evidence in support of the party opposing summary judgment

6

and resolving doubts concerning the evidence in favor of that party." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017–1018.)

The essential elements for both negligence and premises liability are duty, breach, causation, and damages. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*); *Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1207.) The trial court concluded that Hassaine was defeated by the first element because CDS did not owe her any duty of care. " 'Duty, being a question of law, is particularly amenable to resolution by summary judgment.' " (*Regents, supra,* 4 Cal.5th at p. 618.) "Whether a duty exists is a question of law to be resolved by the court." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).) Because the trial court granted summary judgment on the basis of no duty, it did not reach CDS's alternative arguments regarding breach and causation. But regardless of the court's stated reasons, we are compelled to affirm the judgment if it was correct on any ground the parties had an adequate opportunity to address below. (*Staats v. Vinter's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 832 (*Staats*).) As we explain, summary judgment is unwarranted on any of the three asserted grounds.

B.     *As a Matter of Law, CDS Owed Hassaine a Duty of Reasonable Care.*

The question of whether one owes another a legal 'duty' so as to face tort liability upon breach is not really a question at all. It is instead " 'a shorthand statement of a conclusion' "—" 'only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " (*Dillon v. Legg* (1968) 68 Cal.2d 728, 734, citing Prosser, Law of Torts (3d ed. 1964) pp. 332–333.) Here, for reasons we will explain, CDS had a special relationship with Hassaine that gave rise to a common law duty of reasonable care. This duty was not constrained by its

7

contractual arrangement with Costco defining the scope of its work area and cleanup responsibilities.

1. *CDS owed Hassaine a common law duty of reasonable care by virtue of its special relationship with Costco customers.*

It is a basic precept of tort law that each person has a duty to exercise ordinary care and is liable for injuries resulting from a failure to act reasonably under the circumstances—Civil Code section 1714 reflects this default rule. (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771 (*Cabral*).)[3] Courts depart from this general rule only where a statute creates an exception, or the policy considerations articulated in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*) require the courts to create one. (*Cabral,* at p. 771.)[4] Applying these concepts, the *Cabral* court concluded that a major grocery store chain owed a common law duty of reasonable care to fellow motorists and therefore could be liable for negligence following an accident that occurred alongside an interstate highway after one of its truck drivers pulled over to eat a snack. (*Id.* at p. 783.) No considerations of foreseeability or extrinsic policy under *Rowland* justified departure from the general rule

---

[3]    Civil Code section 1714, subdivision (a) provides: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."

[4]    Under *Rowland,* a court might depart from the default duty rule by balancing  factors such as the foreseeability of harm, certainty that plaintiff suffered injury, connection between defendant's conduct and injury, moral blame attached to defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to community of imposing a duty to exercise care with resulting liability for breach, and availability, cost and prevalence of insurance for risk involved. (*Rowland, supra,* 69 Cal.2d at pp. 112–113.)

that the grocery chain owed other motorists a duty of care. (*Cabral,* at pp. 774–784.)

While broad, the default duty rule also "has limits." (*Brown, supra,* 11 Cal.5th at p. 214.) It typically applies only where it is the *defendant* who created the risk of harm to the plaintiff; "[t]he law does not impose the same duty on a defendant who did not contribute to the risk that the plaintiff would suffer the harm alleged." (*Ibid.*) Even where a person discovers another in peril and is in a position to help, that person is generally not liable in tort for failing to protect the potential victim if he or she did not contribute to creating the risk. (*Ibid.*; see *Williams v. State of California* (1983) 34 Cal.3d 18, 23 ["As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act."].) Despite criticism that this "no-duty-to-protect" rule produces seemingly repugnant outcomes, it is grounded in various policy reasons. (*Brown,* at p. 215.)

Perhaps because of its harsh results, the no-duty-to-protect rule is "not absolute." (*Brown, supra,* 11 Cal.5th at p. 215.) Where there is a special relationship between the parties that gives the victim a right to expect protection from the defendant, the law imposes an affirmative duty to protect. (*Id.* at pp. 215–216; see *Regents, supra,* 4 Cal.5th at p. 619.) The nature of the parties' relationship "puts the defendant in a unique position to protect the plaintiff from injury," and "[t]he law requires the defendant to use this position accordingly." (*Brown,* at p. 216, citing Rest.3d Torts, Liability for Physical and Emotional Harm (2012) § 40, com. h.)

One such special relationship exists between businesses and their invitees: "a business or other possessor of land that holds its premises open

9

to the public" owes a duty of reasonable care to "those who are lawfully on the premises" regarding risks that arise within the scope of their relationship. (Rest.3d Torts, *supra,* § 40(a) & (b)(3).)[5]  "[A]lthough a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." (*Ortega, supra,* 26 Cal.4th at p. 1205.)  By inviting the public to its store, an owner or possessor has the duty "to exercise ordinary care and prudence to keep the aisles and passageways of the premises in and through which, by their location and arrangement, a customer in making purchases is induced to go, in a reasonably safe condition so as not unnecessarily to expose the customer to danger or accident." (*Hodge v. Weinstock, Lubin & Co.* (1930) 109 Cal.App. 393, 396–397; see *Tuttle v. Crawford* (1936) 8 Cal.2d 126, 130.)  This duty extends to all parts of the premises over which the business proprietor has control.  (See *Johnston v. De La Guerra Properties* (1946) 28 Cal.2d 394, 401 [restaurant had a duty to maintain a common passageway *outside* the leased premises, over which it exercised control].)  Irrespective of control, it also extends to all property the proprietor impliedly adopts and invites others to use. (*Danisan, supra,* 155 Cal.App.2d at p. 838.)  As a general matter, a business invites its customers to all parts of the store where its customers would be expected to go.  (*Id.* at p. 837.)

The question of duty focuses on the general category of negligent conduct alleged by the plaintiff, without regard to the particular facts or evidence. (*Cabral, supra,* 51 Cal.4th at pp. 773–774.)  Here, in other words, do third party sample vendors *generally* owe a store's customers a duty of

---

[5]    "By California law, an invitee is one who by express or implied invitation is brought or comes on to the premises for the land possessor's advantage, or their mutual benefit or common interest." (*Beauchamp v. Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 27 (*Beauchamp*).)

10

care? Although there is generally no duty to protect another from a peril the alleged tortfeasor did not help create, a well-recognized exception to this "no-duty-to-protect" rule applies to the special relationship that exists between a business and its customers. Accordingly, the question before us is whether CDS is part of the business enterprise—which by virtue of its special relationship to its customers bears an affirmative duty to protect them even if a third party created the peril—or is more akin to fellow Costco shoppers—who would owe no duty to warn even if they saw the liquid on the floor and could have prevented Hassaine's fall.

Framed in this manner, it is readily apparent that CDS was part of the business enterprise and thus owed Costco shoppers a duty of reasonable care to provide a safe shopping facility. It would be up to a jury to assess whether any given failure to protect by CDS was reasonable under the circumstances. As the Supreme Court explained in *Cabral,* "The duty of reasonable care is the same under all these circumstances; what varies with the specific facts of the case is whether the defendant breached that duty. *That question . . .* is generally one to be decided by the jury, not the court." (51 Cal.4th at p. 784.)

    2.    *CDS's common law duty of reasonable care was not affected by its agreement with Costco.*

Finding a special relationship giving rise to a duty of reasonable care is not the end of the inquiry. "[E]ven when a special relationship gives rise to an affirmative duty to protect, a court must still consider whether the policy considerations set out in *Rowland* warrant a departure from that duty in the relevant category of cases." (*Brown, supra,* 11 Cal.5th at p. 222.) In other words, is there some special reason in this case not to impose the duty to act reasonably that we recognize and apply in virtually every other case? CDS maintains there was, pointing to the terms of its contract with Costco. We disagree.

11

On the day of the incident, CDS was serving samples of butternut squash kale ravioli to Costco customers at the end of the aisle where Hassaine fell. CDS's contract with Costco stated that it was an "independently established business separate and apart from Costco," but nonetheless required CDS demonstrators "to be gracious, helpful and courteous to all Costco members, and to maintain their work area and a reasonable vicinity adjacent thereto in a safe and sanitary condition." The contract expressly required CDS to maintain its workstation and the adjacent area within a 12-foot perimeter in a safe and sanitary condition.[6]

Notwithstanding the general rule that businesses owe a duty to their customers to keep the premises reasonably safe, CDS argues that an exception should be recognized, and no duty imposed on independent contractors whose responsibility for the premises is limited by their contract with the business. On the particular facts of this case, CDS maintains that it owed customers no duty to address hazards outside the 12-foot perimeter specified in the contract. Accepting this argument, the trial court decided that CDS's contract with Costco limited the scope of its legal duty.

Simply put, CDS's argument confuses two different legal theories that are based on distinct sources of legal obligations. The terms of an agreement can certainly affect the scope of a party's obligation under a contract and its liability for breach. But the duty to use reasonable care arises not from contract, but from the common law of torts as codified in California in Civil Code section 1714. There is no legal basis to permit two participants in a business enterprise and potential defendants—here, CDS and Costco—to

---

[6]    For her part, Hassaine concedes her fall occurred outside the 12-foot perimeter, but suggests that parts of the slick substance migrated within that perimeter by the time she fell.

contractually limit between themselves the scope of the *tort* duty that one of them owes to a third-party plaintiff/victim who was not a party to the contract.[7]

We agree with Hassaine that *Danisan, supra,* 155 Cal.App.2d 833 is instructive. A butcher, a dry goods grocer, and a produce vendor operated within an enclosed market. (*Id.* at p. 835.) Each "had a lease which covered a particular area of the building and provided among other things that the lessee should have '. . . the right of ingress and egress in, to, upon, through and over all parts and portions of said property as may be necessary to carry on and operate . . . [the particular department].' " (*Ibid.*) After buying meat and groceries, a customer proceeded to the produce area, where she slipped on an onion peel lying on the ground. (*Id.* at pp. 836–837.) The trial court granted nonsuit motions filed by the butcher and grocer; in reversing, the appellate court rejected two arguments that are relevant here.

First, the butcher and grocer argued that even if they had invited the plaintiff to shop the entire market, at the time she fell, she had completed her meat and grocery purchases and had no intention to return. The defendants suggested that the customer was no longer their invitee to whom they owed a duty. Disagreeing, the court reasoned that by jointly operating the premises, all three vendors "intended to and did invite the public generally to patronize" the entire market. (*Danisan, supra,* 155 Cal.App.2d at p. 838.) While the plaintiff stated she had completed her meat and grocery purchases,

---

[7]     Cases recognizing that parties may contractually agree to *indemnify* one another in the event of a third party claim do not suggest otherwise. (See, e.g., *Crawford Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 551.) Nor is this a case in which the injured party signed a release expressly waiving claims for tort liability. (See, e.g., *Madison v. Superior Court* (1988) 203 Cal.App.3d 589, 598.)

"it could not be said as a matter of law that she had, for those reasons, ceased to be the invitee of the butcher shop and the grocery department"—in other words, their invitation "had not been exhausted merely because in her mind at the moment she fell she did not intend to make further purchases." (*Id.* at pp. 837–838.) Viewing the record, it was apparent that each vendor invited the general public to patronize the market, and their invitation "was not limited to the area occupied by any one defendant to the exclusion of others, but to the contrary was an invitation by all defendants and extended to all portions of the premises where plaintiff would likely shop." (*Id.* at p. 838.)[8]

Second, the *Danisan* court addressed the defendants' claim that they owed the plaintiff no legal duty because the injury happened in an area they had no right to enter or clean. (*Danisan, supra,* 155 Cal.App.2d at p. 838.) Rejecting this contention as well, the court reasoned that the defendants' lack of ownership or right to maintain the property was important but not conclusive. Where a business expressly or impliedly adopts the property of another and invites others to use it, that business "owes to such invitee a duty to exercise reasonable care to see that the property is safe." (*Ibid.*; see,

---

8    *Danisan* was decided before the Supreme Court in *Rowland, supra,* 69 Cal.2d at page 119 repudiated the classic trespasser-licensee-invitee distinctions to define duty in favor of Civil Code section 1714's basic foreseeability approach. (See 6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, §§ 1228, 1270.) Although by this repudiation *Rowland* "greatly enlarged the duties owed to licensees and trespassers, it had less effect on the already broad scope of duties owed to invitees." (6 Witkin, Summary of Cal. Law, *supra,* Torts, § 1260.) As later case law has made clear, *Rowland* "does not generally abrogate the decisions declaring the substantive duties of the possessor of land to invitees nor those establishing the correlative rights and duties of invitees." (*Beauchamp, supra,* 273 Cal.App.2d at p. 27.) Accordingly, we draw from *Danisan*'s pre-*Rowland* discussion of the appropriate *scope* of an invitation in evaluating CDS's duty of care to its invitees.

14

e.g., *Food Pro Internat., Inc. v. Farmers Ins. Exchange* (2008) 169 Cal.App.4th 976, 988−989 [in insurance coverage dispute, ordinary negligence liability could lie, triggering insurer's duty to defend, as to an independent contractor who failed to warn against a danger created by a third party that fell outside the scope of the contractor's professional services].) Whether or not reasonable care was used is generally a jury question. (*Danisan,* at p. 838.)

Here, as in *Danisan*, CDS had a contract that limited the floor area it was responsible for maintaining. But nothing in that contract with *Costco* limits the scope of its common law duty to *Hassaine*. By positioning itself inside a Costco store and offering product samples to Costco shoppers traversing store aisles, CDS had a special relationship with its Costco shopper-invitees that gave rise to a duty to exercise ordinary care. That duty encompassed not solely the 12-foot "work area" defined in the Costco-CDS contract but extended to all areas that shoppers would reasonably be expected to use—i.e., the entire Costco store. Its lack of a contractual responsibility to maintain the property outside the 12-foot perimeter is not determinative, as CDS impliedly adopted Costco's premises and invited its customers to use the Costco aisles. If CDS personnel became aware of a hazard in a different part of the store, they could at a minimum advise an appropriate Costco employee. Even after customers moved on to another part of the store, it cannot be said that CDS's invitation to them ceased. (See *Danisan, supra,* 155 Cal.2d at pp. 837−838.)[9]

---

[9]    Because we conclude CDS's common law duty was not constrained by its contract with Costco, we do not reach Hassaine's assertion that there was evidence the spill had migrated to within a few feet of CDS's workstation at the time she fell.

Attempting to distinguish *Danisan,* CDS points out that each vendor in that case signed a lease granting it "the right to use all the open space in the market." CDS maintains that *Danisan* imposed a joint duty of care on each vendor "[b]ecause of the nature and degree of the entanglement amongst the entities" placing them in joint operation of the market and owing a joint duty of care. But this reads *Danisan* too narrowly. Each of the three vendors operated under a lease covering a particular area of the building, and "each lessee followed an imaginary line in maintaining and keeping clean the area in which its business was conducted." (*Danisan, supra,* 155 Cal.App.2d at pp. 835−836.) The court reached its decision not based on the "degree of entanglement amongst the entities" but rather by considering the reasonable scope of each vendor's *invitation.* It determined that the invitation and resulting duty extended "to all portions of the premises where plaintiff would likely shop." (*Id.* at p. 838.) The fact that each lessee had no right to enter or clean another's area did not compel a different result where each vendor had "impliedly adopt[ed] the property of another and invite[d] others to use it." (*Ibid.*) There, as here, the vendors held a special relationship with the plaintiff giving rise to a duty to exercise reasonable care as articulated by Civil Code section 1714.[10]

> 3. *No other policy factors support a limitation on CDS's general duty to exercise reasonable care.*

Deciding that the special relationship between CDS and Costco shoppers is unaffected by limitations in the CDS-Costco contract does not end our duty inquiry. We must also consider whether any special foreseeability

---

[10] Considering it unnecessary to our analysis, we do not address Hassaine's argument that there was evidence of an *independent implied agreement* under which Costco and CDS acted in practice as mutual agents with respect to maintaining floor safety.

concerns or policy considerations set forth in *Rowland* otherwise require a departure from the usual duty to exercise reasonable care. (*Brown, supra,* 11 Cal.5th at p. 222.) The *Rowland* factors (listed *ante* at fn. 4) fall into two categories. "Three factors—foreseeability, certainty, and the connection between the plaintiff and the defendant—address the foreseeability of the relevant injury, while the other four—moral blame, preventing future harm, burden [to the defendant], and availability of insurance—take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1145 (*Kesner*).)

Hassaine cites *Rowland* in her opening brief. CDS does not discuss the case or its factors but responds by suggesting it would go too far to impose a duty on CDS "to all COSTCO shoppers, in all locations, and at all times" that would extend "throughout COSTCO's entire warehouse" and be untethered to liability connected to the samples CDS was serving. Implied in CDS's argument is that it would be overly burdensome were we to extend its duty "to all means of egress and ingress and all aisles within Costco" and that this, in turn, supports limiting its duty to the contractually defined 12-foot perimeter.

"The most important factor to consider in determining whether to create an exception to the general duty to exercise ordinary care articulated by section 1714 is whether the injury in question was foreseeable." (*Kesner, supra,* 1 Cal.5th at p. 1145.) Our task is not to decide whether a *particular* injury was reasonably foreseeable but rather whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm the plaintiff experienced to warrant imposing liability. (*Ibid.*; *Cabral, supra,* 51 Cal.4th at p. 772.) Here, it is not only foreseeable but a matter of common

experience that shoppers walking the aisles of a Costco warehouse might slip and fall on a substance spilled on the concrete floor. The very existence of food and beverage samples at tables scattered throughout the store amplifies the risk that a Costco shopper might create a hazard somewhere else in the store.[11]

Nor do any of the various policy factors listed in *Rowland* offer any reason to refrain from placing a duty of care on third party sample vendors operating within Costco. A legal conclusion that CDS owed Costco customers a duty of reasonable care does not suggest that CDS would necessarily face *liability* for a slip and fall anywhere in the warehouse. It is up to the jury to evaluate whether CDS's conduct was *reasonable under the circumstances*. This in turn implicates a fact question as to breach, provided the facts are reasonably in dispute. (*Cabral, supra,* 51 Cal.4th at pp. 773, 784.)

In summary, by virtue of its special relationship with Costco customers, CDS owed a duty of reasonable care consistent with Civil Code section 1714. Unlike customers who have no affirmative duty to protect their fellow shoppers, CDS (along with Costco) invited customers to use the public areas of the store as they looked at the merchandise being offered for sale and tasted the various samples being offered by CDS. CDS's common law duty to Costco shoppers was not defined or constrained by CDS's separate

---

[11] The other foreseeability factors point the same way. The second *Rowland* factor (uncertainty of injury) is inapplicable because Hassaine alleges certain and compensable physical harm. (See *Kesner, supra,* 1 Cal.5th at p. 1148; *Staats, supra,* 25 Cal.App.5th at p. 839.) The connection between CDS's conduct and the injury suffered is strongly related to the foreseeability question itself (*Cabral, supra,* 51 Cal.4th at p. 779), and "generally is relevant when intervening third party conduct caused the injury." (*Staats,* at p. 839.) For reasons already discussed, it was reasonably foreseeable that a Costco shopper might slip and fall on a liquid inadvertently spilled on an aisle floor.

18

contractual agreement with Costco.  As none of the *Rowland* factors warrant creating an exception to the general rule, CDS owed Hassaine a common law duty of care and the trial court erred in concluding otherwise.

C.    *Triable Issues of Fact Preclude Summary Judgment on the Ground that There Was No Breach.*

As an alternative argument to claiming it owed no legal duty, CDS moved for summary judgment on the ground that Hassaine could not prove breach.  The record compels us to reject this claim.  We cannot say that *no* reasonable jury would find that CDS failed to act with reasonable care under the circumstances.  (*Cabral, supra,* 51 Cal.4th at p. 773.)

A business does not ensure its customers' physical safety but nonetheless owes its customers "a duty to exercise reasonable care in keeping the premises reasonably safe."  (*Ortega, supra,* 26 Cal.4th at p. 1205.)  It satisfies this duty "by making reasonable inspections of the portions of the premises open to customers."  (*Ibid.*)  Although lack of knowledge is not a defense, a business must have actual or constructive knowledge of a defect or been able to discover it by exercising ordinary care.  (*Id.* at p. 1206.)

As a rule, "a defendant is entitled to judgment as a matter of law if the plaintiff fails to show that the dangerous condition existed for at least a sufficient time to be discovered by ordinary care and inspection."  (*Ortega, supra,* 26 Cal.4th at p. 1207.)  But this inquiry generally presents "a question of fact for the jury, and the cases do not impose exact time limitations."  (*Ibid.*)  For example, a banana peel lying on the floor of a store for a minute and a half could not give rise to tort liability following a customer's fall.  (*Girvetz v. Boys Market, Inc.* 91 Cal.App.2d 827, 831−832 (*Givetz*).)  In reaching this conclusion, *Givetz* distinguished *Louie v. Hagstrom's Food Stores*, 81 Cal.App.2d 601 at page 608, where the stickiness of the syrup

19

demonstrated that it had been on the ground for a substantial period of time before the customer fell.

Drawing parallels to *Givetz*, CDS contends that a seven-minute time interval between the spill and Hassaine's fall was too short as a matter of law to find a breach. But this timing argument goes only so far given other evidence of constructive knowledge proffered by Hassaine. Costco employee Martin Vargas confirmed from looking at the video that the spill was visible and measured at least four by six inches. At one point in the video, another shopper steps right into the spill and looks back toward it as a CDS employee (Lynette Kottis) walks by. A few minutes later, the same CDS employee walks past the spill a second time. Vargas could not identify any reason the CDS employee would not have seen the spill. As Costco manager Tatyana Gashymov explained, "[m]ost spills are visible on the concrete because it turns darker" where the spill is. Kottis testified that CDS employees were expected to report spills even outside a 12-foot perimeter from their sample tables. She was wearing her glasses on the day of the accident.

If credited by a jury, this evidence would support a reasonable inference of constructive knowledge on the part of CDS—i.e., had she exercised reasonable care, Kottis would have discovered the spill in the two times that she walked past. (See *Ortega, supra,* 26 Cal.4th at pp. 1206–1207 [constructive knowledge may be shown by inferences reasonably drawn from circumstantial evidence]; compare *id.* at p. 1211 [no breach where store owner discharges its duty "by inspecting its premises in a reasonable manner"] with *Ruiz v. Walmart, Inc.* (C.D.Cal. Jan. 21, 2021, No. CV 20-01129 RAO) 2021 U.S.Dist. Lexis 49761, *6 [video showing store employee walk part-way through an aisle where a customer fell 11 minutes later

20

created a triable issue as to whether her inspection was reasonable].)[12] Because Hassaine's evidence creates a triable issue of fact on the issue of breach, summary judgment is unwarranted on this ground.

D.   *Triable Issues of Fact Preclude Summary Judgment on the Ground That There Was No Causation.*

As a second alternative argument, CDS sought summary judgment on the basis that Hassaine could not prove causation. In its view, Hassaine only offered "speculation and conjecture as to how or why she fell" and supplied "no evidence that any purported negligence of CDS was a substantial factor in causing her slip and fall." CDS revisits this argument only briefly on appeal, suggesting its proffered evidence *disproved* that any negligence on its part caused or contributed to Hassaine's injuries. As we explain, the evidence on summary judgment does not rule out a reasonable jury finding of causation.

To prove causation at trial, a " 'plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.' " (*Ortega, supra,* 26 Cal.4th at p. 1205.) A "mere possibility" of causation is insufficient. (*Id.* at pp. 1205−1206.) Rather, the plaintiff must demonstrate that "the defendant's breach of its duty to exercise ordinary care was a substantial

---

[12]   CDS argues that there could be no constructive knowledge given the fact that Hassaine and her sister-in-law also "walked by and nearly stepped in the spill prior to [Hassaine's] fall and did not see it." But the question is not whether the plaintiff should have reasonably seen the spill (or even whether she was comparatively negligent in not seeing it), but rather whether CDS reasonably should have done so. Evidence that other customers did not notice the spill at best creates a triable issue as to whether CDS's conduct was reasonable under the circumstances and does not establish as a matter of law that constructive knowledge could not reasonably be found by a jury.

21

factor in bringing about plaintiff's harm." (*Id.* at p. 1205.) This is generally a jury question unless the facts are not in dispute. (*Ibid.*)

The facts here are in significant dispute, precluding summary judgment. According to CDS's Kottis, Hassaine slipped on a liquid substance that felt like oil or soap. Hassaine had a twin-pack of Softsoap in her cart and described the product as slick or oily to the touch. The store video showed Hassaine and her sister-in-law park the cart for a minute and a half in that aisle; when they left, there was a dark spot on the floor where Hassaine would later fall.

As Costco merchandiser Dustin Wimberly explained, Softsoap is a high-volume product that is always stocked. Multiple Costco employees testified about past spills involving leaky Softsoap containers like the one in Hassaine's cart at the time of her fall. The tops of the containers were not sealed; "[y]ou could just pop the lid and pour." Costco manager Tatyana Gashymov lifted the Softsoap containers out of the cart on arriving at the scene, but she may not have wiped caps to see if they were leaking. On the surveillance video, Hassaine can be seen falling to the ground after stepping on a spill in the same part of the aisle where her cart previously stood. Gashymov observed an oily substance dripping from Hassaine's cart. Fellow Costco manager Matthew Mitzelfelt likewise saw an oily substance near the bottom corner of Hassaine's cart.

Taken together, this evidence would support a nonspeculative jury finding that Hassaine slipped and fell on liquid soap, which leaked from a container she placed in her shopping cart. This case is readily distinguishable from the case CDS cited below, *Peralta v. Vons Companies, Inc.* (2018) 24 Cal.App.5th 1030, 1036, in which the plaintiff's evidence established a mere *possibility* of a slippery substance on the floor. It was

22

undisputed that Hassaine fell and that there was liquid on the floor. Questions as to whether the substance was instead coconut oil, or whether the soap containers in Hassaine's cart were actually leaking, merely create triable issues and do not convert a *reasonable* inference of how Hassaine fell into a *speculative* one.[13] Moreover, evidence that Kottis twice walked past the spill before Hassaine fell creates a jury question as to whether any negligence by CDS was a substantial factor in causing Hassaine's injury.[14] Accordingly, one or more triable issues of material fact preclude summary judgment on causation grounds.

## DISPOSITION

The judgment is reversed. Hassaine is entitled to her costs on appeal.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

AARON, J.

---

[13]    We reach this conclusion without considering the declaration offered by Hassaine's expert, Brad Avrit and accordingly need not address CDS's claim that the expert declaration was inadmissible.

[14]    Because CDS owed Costco shoppers a duty of ordinary care to protect against hazards in the store, it is immaterial whether there is "evidence that this substance was in any way related to CDS" or "proof that CDS was in any way involved in the cause of her fall."

23